866 So.2d 1231 (2003)
NEW WORLD COMMUNICATIONS OF TAMPA, INC., d/b/a WTVT-TV, Appellant,
v.
Jane AKRE, Appellee.
No. 2D01-529.
District Court of Appeal of Florida, Second District.
February 14, 2003.
Order Granting Rehearing and Clarification and Denying Rehearing and Certification Denied February 25, 2004.
*1232 William E. McDaniels and Thomas G. Hentoff of Williams & Connolly LLP, Washington, DC, Patricia Fields Anderson, P.A., St. Petersburg, and Gary D. Roberts and Theodore A. Russell of Fox Group Legal Department, Los Angeles, CA, for Appellant.
Michael S. Finch, St. Petersburg, and Stuart C. Markman, Robert W. Ritsch, and Katherine Earle Yanes of Kynes, Markman & Felman, P.A., Tampa, for Appellee.
Roy C. Young of Young, vanAssenderp, Varnadoe & Anderson, P.A., Tallahassee, for Amicus Curiae The Florida Chamber of Commerce.
Robert Corn-Revere and Brad C. Deutsch of Hogan & Hartson, LLP, Washington, DC, for Amicus Curiae Belo Corp., Cox Television, Inc., Gannett Co., Inc., Media General Operations, Inc., and Post-Newsweek Stations, Inc.
Order Granting Rehearing and Clarification and Denying Rehearing En Banc and Certification Denied February 25, 2004.
KELLY, Judge.
New World Communications of Tampa, Inc., d/b/a WTVT-TV, a subsidiary of Fox Television, challenges a judgment entered against it for violating Florida's private sector whistle-blower's statute, section 448.102, Florida Statutes (Supp.1998). We reverse.
In December 1996, WTVT hired the appellee, Jane Akre, and her husband, Steve Wilson, as a husband-and-wife investigative reporting team. Shortly after Akre and Wilson arrived at WTVT, they began working on a story about the use of synthetic bovine growth hormone ("BGH") in Florida dairy cattle. Their work on this story led to what could be characterized as an eight-month tug-of-war between the reporters and WTVT's management and lawyers over the content of the story. Each time the station asked Wilson and Akre to provide supporting documentation for statements in the story or to make changes in the content of the story, the reporters accused the station of attempting to distort the story to favor the manufacturer of BGH.
In September 1997, WTVT notified Akre and Wilson that it was exercising its option to terminate their employment contracts without cause. Akre and Wilson responded in writing to WTVT threatening to file a complaint with the Federal Communications Commission ("FCC") alleging that the station had "illegally" edited the still unfinished BGH report in violation of an FCC policy against federally licensed broadcasters deliberately distorting the news. The parties never resolved their differences regarding the content of the *1233 story, and consequently, the story never aired.
In April 1998, Akre and Wilson sued WTVT alleging, among other things, claims under the whistle-blower's statute. Those claims alleged that their terminations had been in retaliation for their resisting WTVT's attempts to distort or suppress the BGH story and for threatening to report the alleged news distortion to the FCC. Akre also brought claims for declaratory relief and for breach of contract. After a four-week trial, a jury found against Wilson on all of his claims. The trial court directed a verdict against Akre on her breach of contract claim, Akre abandoned her claim for declaratory relief, and the trial court let her whistle-blower claims go to the jury. The jury rejected all of Akre's claims except her claim that WTVT retaliated against her in response to her threat to disclose the alleged news distortion to the FCC. The jury awarded Akre $425,000 in damages.
While WTVT has raised a number of challenges to the judgment obtained by Akre, we need not address each challenge because we find as a threshold matter that Akre failed to state a claim under the whistle-blower's statute. The portion of the whistle-blower's statute pertinent to this appeal prohibits retaliation against employees who have "[d]isclosed, or threatened to disclose," employer conduct that "is in violation of" a law, rule, or regulation. § 448.102(1)(3). The statute defines a "law, rule or regulation" as "includ[ing] any statute or ... any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." § 448.101(4), Fla. Stat. (1997). We agree with WTVT that the FCC's policy against the intentional falsification of the newswhich the FCC has called its "news distortion policy"does not qualify as the required "law, rule, or regulation" under section 448.102.
The FCC has never published its news distortion policy as a regulation with definitive elements and defenses. Instead, the FCC has developed the policy through the adjudicatory process in decisions resolving challenges to broadcasters' licenses. The policy's roots can be traced to 1949 when the FCC first expressed its concern regarding deceptive news in very general terms stating that "[a] licensee would be abusing his position as a public trustee of these important means of mass communications were he to withhold from expression over his facilities relevant news of facts concerning a controversy or to slant or distort the news." See Chad Raphael, The FCC's Broadcast News Distortion Rules: Regulation by Drooping Eyelid, 6 Comm. L. & Policy 485, 494 (2001) (quoting Editorializing by Broadcast Licensees, 13 F.C.C. 1246, 1246 (1949)).
The policy did not begin to take shape, however, until 1969 when the FCC was called upon to investigate complaints regarding news distortion. Raphael at 494. Notably, the FCC did not take the initiative to investigate these complaints, but rather acted only after Congress referred complaints it had received to the FCC. In a series of opinions issued in licensing proceedings between 1969 and 1973, the FCC stated that when considering the status of a broadcaster's license, it would take into consideration proven instances of "deliberate news distortion," also called "intentional falsification of the news" or "rigging or slanting the news." In re CBS Program "Hunger in America", 20 F.C.C.2d 143, 150-51 (1969). This series of FCC opinions has come to be known as the FCC's news distortion policy.
Akre argues that the FCC's policy is a rule as defined by section *1234 120.52(15), Florida Statutes (1997), which provides:
"Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule.
Even if we agreed with Akre that the FCC's news distortion policy was a "rule" as defined by section 120.52(15), her argument overlooks the fact that the whistleblower's statute specifically limits the definition of "rule" to an "adopted" rule. § 448.101(4). "This limitation to `adopted' material only appears deliberate, and well serves the public by hinging civil liability upon matters of which due notice, actual or imputed, has been conveyed." Forrester v. John B. Phipps, Inc., 643 So.2d 1109 (Fla. 1st DCA 1994). We find the legislature's use of the word "adopted" in the statute to be a limitation on the scope of conduct that will subject an employer to liability under the statute.
It is undisputed that the FCC's news distortion policy has never been "adopted" as defined by section 120.54, Florida Statutes (1997). In that regard, Akre notes that federal agencies may announce general policies and interpretive principles through the adjudicative process and argues that the fact that "the FCC adopted the news distortion policy through an adjudicative process does not affect its validity or enforceability as a matter of federal law." This argument is flawed in two respects. First, federal law recognizes a dichotomy between rulemaking and adjudication; it does not equate the two. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (Scalia, J., concurring). Second, while federal agencies may have discretion to formulate policy through the adjudicative process, the same is not true under Florida law. The Florida Legislature has limited state agencies' discretion to formulate policy through the adjudicative process by requiring agencies to formally adopt each agency statement that fits the definition of a "rule" under section 120.52. See § 120.54. As noted above, the legislature's use of the word "adopted" in the whistle-blower's statute was deliberate and was intended to limit the scope of conduct that will subject an employer to liability. This limitation is consistent with the legislature's requirement that agency statements that fit the definition of a "rule" be formally adopted. Recognizing an uncodified agency policy developed through the adjudicative process as the equivalent of a formally adopted rule is not consistent with this policy, and it would expand the scope of conduct that could subject an employer to liability beyond what Florida's Legislature could have contemplated when it enacted the whistle-blower's statute.
Because the FCC's news distortion policy is not a "law, rule, or regulation" under section 448.102, Akre has failed to state a claim under the whistle-blower's statute. Accordingly, we reverse the judgment in her favor and remand for entry of a judgment in favor of WTVT.
Reversed and remanded.
CASANUEVA, J., and GREEN, OLIVER L., Senior Judge, Concur.
ORDER ON APPELLEE'S MOTION FOR REHEARING, MOTION FOR CLARIFICATION, MOTION FOR REHEARING EN BANC, AND MOTION FOR CERTIFICATION OF QUESTION OF GREAT PUBLIC IMPORTANCE.
KELLY, Judge.
This court entered an order granting appellate attorney's fees to the appellant, *1235 New World Communications of Tampa, Inc., d/b/a WTVT-TV, a subsidiary of Fox Television. Thereafter, the appellee, Jane Akre, sought rehearing, clarification, rehearing en banc, and certification of a question of great public importance. We grant Akre's requests for rehearing and clarification and deny her requests for rehearing en banc and certification.
WTVT appealed a final judgment entered against it for violating Florida's private sector whistle-blower's statute, section 448.102, Florida Statutes (1997). The final judgment was entered pursuant to a jury verdict awarding Akre $425,000 in damages. We reversed after concluding that Akre had failed to state a claim under the whistle-blower's statute. We also granted WTVT's motion for appellate attorney's fees under section 448.104, Florida Statutes (1997), which states, "[a] court may award reasonable attorney's fees, court costs, and expenses to the prevailing party."
In her motion for rehearing, Akre argues that because section 448.104 authorizes an award of attorney's fees to prevailing defendants as well as to prevailing plaintiffs, this court should apply the standard articulated in Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). In Christiansburg, the Court had to determine the proper standard for an award of attorney's fees to a prevailing defendant in an action brought under Title VII of the Civil Rights Act of 1964. Title VII gives courts discretion to award fees to the prevailing party, as does section 448.104, but it does not give any indication of when a court should award fees to a prevailing plaintiff or a prevailing defendant.
The Christiansburg Court concluded that equitable considerations embodied in Title VII justified applying different standards depending on whether the prevailing party was a plaintiff or a defendant. The Court found that while fees should be awarded to every prevailing plaintiff unless special circumstances would make such an award unjust, fees should only be awarded to a prevailing defendant when the plaintiff's action was "frivolous, unreasonable, or without foundation." Christiansburg, 434 U.S. at 420.
We do not agree with Akre's contention that this same standard should apply to an action brought under Florida's whistleblower's statute. We are not persuaded that the reasons cited by the Christiansburg Court for applying different standards to prevailing plaintiffs and defendants apply to cases brought under section 448.103. To the extent that this question has been addressed by other courts, they have likewise concluded that the Christiansburg standard is not applicable to fee awards under section 448.104. See Gamb v. Hilton Hotels Corp., No. 95-466-CIV-ORL-19, 1997 WL 893874 (M.D.Fla. Sept.26, 1997), aff'd, 132 F.3d 46 (11th Cir.1997); McGregor v. Bd. of County Comm'rs, 130 F.R.D. 464 (S.D.Fla.1990), aff'd, 956 F.2d 1017 (11th Cir.1992).
Nevertheless, because section 448.104 is not mandatory, we must consider whether to exercise our discretion and make such an award in this case. Under the circumstances of this appeal, we conclude that WTVT is not entitled to appellate attorney's fees. Akre came to this court as an appellee defending a final judgment entered in her favor at the conclusion of a jury trial. We do not believe that it is either realistic or good policy to require an appellee who has obtained a favorable jury verdict to abandon it on appeal or risk an award of attorney's fees if it is reversed.
We reach this conclusion even though the whistle-blower aspect of Akre's *1236 case was without legal merit from its inception. This court has held that because all final judgments have a presumption of correctness, attempting to uphold one is not frivolous. Cf. Dep't of Highway Safety & Motor Vehicles v. Salter, 710 So.2d 1039 (Fla. 2d DCA 1998).[1] Accordingly, even the lack of legal merit in Akre's position does not convince us that we should exercise our discretion to award appellate attorney's fees to WTVT.
We emphasize that we are only considering the issue of a proper exercise of discretion for an award of appellate attorney's fees. On remand, the trial court will have to make its own determination regarding whether to award trial court attorney's fees to WTVT as the prevailing party. To be entitled to such an award, however, WTVT does not have to demonstrate that Akre's suit was frivolous.
No further motions for rehearing will be entertained.
CASANUEVA, J., and GREEN, OLIVER L., SENIOR JUDGE, Concur.
NOTES
[1] We are aware of the Fourth District's decision in Forum v. Boca Burger, Inc., 788 So.2d 1055 (Fla. 4th DCA 2001), review granted, 817 So.2d 844 (Fla.2002). We have concluded that it is not pertinent to our decision because Salter still represents this district's position regarding whether defense of a judgment on appeal can ever be considered frivolous. Additionally, we find nothing in Forum that expressly repudiates that principle, which was the law in the Fourth District when Forum was decided. See Coral Springs Roofing Co. v. Campagna, 528 So.2d 557 (Fla. 4th DCA 1988). Rather, the holding in Forum is directed to the proper construction of a 1999 amendment to section 57.105, Florida Statutes, that the Fourth District concluded broadened the circumstances under which a fee award could be made under that statute.