NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


SEAN KEARNS,                              )
                                         )
          Appellant,                     )
                                         )
v.                                       )          Case No. 2D12-6388
                                         )
FARMER ACQUISITION COMPANY d/b/a )
CHARLOTTE HONDA,                         )
                                         )
          Appellee.                      )
_____)

Opinion filed February 11, 2015.

Appeal from the Circuit Court for Charlotte
County; George C. Richards, Judge.

Mark F. Kelly and Robert F. McKee of Kelly
& McKee, P.A., Tampa, for Appellant.

Lisa Griffin Hodgdon of Broad and Cassel,
Tampa, and Ginger Barry Boyd of Broad
and Cassel, Destin, for Appellee.

SILBERMAN, Judge.

          Sean Kearns sued Farmer Acquisition Company d/b/a Charlotte Honda

(Charlotte Honda or the Employer), asserting a claim under sections 448.101 to

448.105, Florida Statutes (2009), also known as Florida's private sector Whistleblower's

Act (the FWA). He now appeals the trial court's order granting a directed verdict

together with the final judgment in favor of Charlotte Honda and the order denying his

motion for new trial. The trial court directed a verdict on the basis that Kearns failed to prove elements one and three of his claim. Because the evidence on elements one and three of Kearns' claim was sufficient to go to the jury, we reverse and remand for a new trial. Specifically, we reverse the trial court's ruling on element one that Kearns failed to prove that what he objected to or refused to participate in was an actual violation of law by the Employer and the ruling on element three that Kearns failed to establish a causal link between his statutorily protected activity and the adverse employment action.

Charlotte Honda hired Kearns as a web administrator in 2006. Kearns cross-trained in 2008 to work in other areas of the dealership, including sales and finance. At trial, Kearns testified that he informed Charlotte Honda that he objected to participating in a practice known as power booking. He explained that in power booking the dealership makes a fraudulent representation to a bank regarding the optional features on a car being sold that are not actually on the car. He explained that by representing to the bank that the car had extra features—such as custom wheels, a sunroof, leather seats, etc.—the bank would conclude that the car being sold was of a higher value than it actually was. This higher value would induce the bank to loan the purchaser of the vehicle a higher dollar amount than it would have loaned had the truth been told. The dealership engaged in this practice to ensure that the purchaser would have the financial ability to proceed with the purchase, thus creating profit for the dealership.

Kearns testified that on one specific occasion he drove one of the dealership's cars home for the evening. The next day, a salesman brought in the paperwork prepared for the sale of that same automobile. In reviewing the paperwork

that was to be sent to the bank to obtain financing for the customer, Kearns noted that the options listed for the vehicle were, to his personal knowledge, features not included on that car.

In addition, he testified that the purchaser's occupation was listed on the application as a nurse. Based on his own personal experience, he questioned the salary the applicant had listed. When he asked the customer if she could prove her income, "she said no. That's what they put on there." The inaccuracies in this application led Kearns to tell the dealership manager, Gene Chavez, that he would not participate in this transaction because it was fraudulent. Kearns specifically testified that Chavez responded, "You will deliver it. I'm tired of your attitude." Kearns also testified that Chavez then took him to the office of Mike McDonald, where Chavez reiterated to McDonald and Kearns that Chavez was the boss and that they were to deliver cars in the way he structured the sales. However, even with this admonition, Kearns refused to finish the transaction. He was not aware of how the transaction was concluded.

At trial, McDonald also described power booking and testified that Chavez asked him and Kearns to use this scheme to assist in sales. McDonald verified the conversation between Chavez and Kearns that occurred in McDonald's office.

In February 2009, Kearns made general complaints to Del Farmer, the director of dealer operations who was based in Kentucky, that Charlotte Honda was not inspecting the cars that it sold. Del Farmer's father, Tracy Farmer, is the owner of Charlotte Honda. In August 2009, Kearns again contacted Del Farmer and complained, saying he had a list of issues. Farmer suggested that the conversation should include

- 3 -

Joe Marshall, the vice-president of operations for the dealership's parent corporation. When Kearns began to explain to Marshall and Farmer his concerns about fraud, banking fraud, and warranty fraud, Marshall stated that Kearns should be talking to Jean Brown, the attorney for the parent corporation.

Later that day, Brown called Kearns and discussed the misleading paperwork being provided to the banks. She advised that this was of concern to her and that she would call him back. When she did call, she indicated that she would travel from the parent company's location in Kentucky to Florida to meet with him.

Brown traveled to Florida accompanied by the corporate comptroller, Tracy Stefanik. They met with Kearns at a restaurant on September 8, 2009, and he reported the power booking transactions and the artificial inflation of income for a prospective buyer who was seeking financing, along with other questionable activities. Kearns testified that the meeting "became a little contentious" and that when he began to mention things Brown responded that "it's not a part of your job description." However, Kearns was also advised that Brown and Stefanik would follow up on his complaints by reviewing the dealership's files. After the meal, they agreed to meet back at the dealership, but Brown and Stefanik told Kearns to "keep it quiet" and not tell anyone at the dealership about the investigation.

Later that afternoon, Brown and Stefanik met with Kearns in his office. Brown reported that their review of the files did not reflect the activities of which he complained. She asked him to provide the VIN number of at least one vehicle that was involved in a fraudulent transaction. Kearns replied that he did not have a VIN number but that if they would go with him to the file room, he could locate files that he had

earlier marked as suspect transactions. Kearns advised that he had marked twenty-five to thirty such files. In the alternative, he offered to go to the file room and photograph the documents with the camera on his phone. Brown declined Kearns' offers, suggesting that she wanted to keep the investigation quiet.

The next day, upon arriving at work at 8:20 a.m., Gene Chavez told Kearns that John Hamill, the dealership's general manager, wanted to see him. When he arrived at the meeting, there were four other persons present besides Hamill. Hamill announced that Kearns' services were no longer needed at the dealership, and Kearns was immediately escorted off the premises. At trial, Hamill testified that he had been instructed by Tracy Farmer, the owner of the parent corporation, to "fire his ass now." Hamill further indicated that Farmer had referred to Kearns as a "troublemaker."

In February 2010, Kearns filed his complaint against Charlotte Honda that asserted a claim under the FWA. He alleged that he was fired because he objected to or refused to participate in violations of law regarding power booking and fraudulent warranty activity. The case went to trial, and at the conclusion of Kearns' case the trial court directed a verdict in favor of Charlotte Honda.

Kearns argues, and we agree, that the trial court erred in granting Charlotte Honda's motion for directed verdict.

> A motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party. In considering a motion for directed verdict, the court must evaluate the testimony in the light most favorable to the nonmoving party and every reasonable inference deduced from the evidence must be indulged in favor [of] the nonmoving party. If there are conflicts in the evidence or different reasonable inferences that may be drawn from the

> evidence, the issue is factual and should be submitted to the jury.

GEICO Gen. Ins. Co. v. Hoy, 136 So. 3d 647, 651 (Fla. 2d DCA 2013) (quoting Sims v. Cristinzio, 898 So. 2d 1004, 1005 (Fla. 2d DCA 2005)).

In making his claim under the FWA, Kearns proceeded under section 448.102(3), which provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." A claim under section 448.102(3) requires the plaintiff to prove "(1) []he engaged in statutorily protected expression; (2) []he suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity." White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005). In granting Charlotte Honda's motion for directed verdict, the trial court concluded that Kearns failed to present evidence of prongs one and three. We disagree.

Regarding the first prong, the FWA requires Kearns in the context of this case to prove he objected to or refused to participate in a "violation of a law, rule, or regulation." § 448.102(3) (emphasis added). In granting the directed verdict, the trial court determined that Kearns had failed to prove an actual violation of law. The statute is plainly worded as requiring the plaintiff to prove conduct that is in violation of the law, and courts have held that in conformity with the plain wording of the statute, an actual violation of law is required. See Norman v. Bright Horizons Family Solutions, LLC, No. 8:12-CV-1301-T-17TBM, 2014 WL 272720, at *6 (M.D. Fla. Jan. 23, 2014); Charlton v. Republic Servs. of Fla., Ltd. P'ship, No. 09-22506-CIV, 2010 WL 2232677, at *3 (S.D.

- 6 -

Fla. June 2, 2010); Odum v. Gov't Emps. Ins. Co., No. 8:08-CV-1282-T-24-EAJ, 2009

WL 2134918, at *3 (M.D. Fla. July 13, 2009), aff'd, 405 F. App'x 396 (11th Cir. 2010)

(affirming without deciding issue of whether employee presented prima facie case on

whether he engaged in protected activity); Smith v. Psychiatric Solutions, Inc., No.

3:08CV3/MCR/EMT, 2009 WL 903624, at *7 (N.D. Fla. Mar. 31, 2009), aff'd, 358 F.

App'x 76, 78 (11th Cir. 2009) (affirming grant of summary judgment and stating that

district court properly applied actual violation standard but that even if good faith belief

standard applied, plaintiff failed on evidence of pretext); White, 369 F. Supp. 2d at 1337-

38; see also In re Standard Jury Instruction in Civil Cases--Report No. 2011--01

(Unlawful Retaliation), 95 So. 3d 106, 110 (Fla. 2012).

However, in Aery v. Wallace Lincoln-Mercury, LLC, 118 So. 3d 904, 916

(Fla. 4th DCA 2013), the Fourth District determined that the employee need only have a

good faith, objectively reasonable belief that the employer's actions that he objected to

were illegal.  In reaching its decision, the Aery court relied upon the Southern District's

decision in Luna v. Walgreen Co., 575 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008), aff'd,

347 F. App'x 469, 470-71 (11th Cir. 2009) (affirming summary judgment based on

Luna's claim under the Americans with Disabilities Act (the ADA)).  More recently, the

Southern District relied upon Aery for the reasonable belief standard in Hernandez v.

Publix Super Markets, Inc., 11 F. Supp. 3d 1177 (S.D. Fla. 2014).

Luna interpreted the ADA, along with the FWA, regarding retaliation.  See

Luna, 575 F. Supp. 2d at 1342.  The court relied on a Title VII case to determine that an

employee need only have a good faith, objectively reasonable belief that the employee's

activity is protected by the statute.  Id. (citing Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998)).

The pertinent provision of Title VII provides as follows:

(a)  Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (2006) (emphasis added).  42 U.S.C. § 2000e-2 defines the particular unlawful employment practices regarding discrimination.  In Standard, the Eleventh Circuit recognized that under a Title VII claim the employee claiming retaliation for opposing the employer's conduct must have a good faith, objectively reasonable belief that the employer's conduct was unlawful under Title VII.  161 F.3d at 1328; see also Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).

In contrast to Luna, in White, 369 F. Supp. 2d at 1338, the Middle District stated that it would not apply the Title VII standard to the FWA.  The White court noted that the Florida Supreme Court has stated that the FWA "prohibits private sector employers from retaliating against 'employees who "blow the whistle" on employers who violate the law or against employees who refuse to participate in violations of the law.' " Id. at 1337 (quoting Arrow Air, Inc. v. Walsh, 645 So. 2d 422, 423 (Fla. 1994)); see also

- 8 -

Golf Channel v. Jenkins, 752 So. 2d 561, 562 (Fla. 2000) (stating that the FWA is "designed 'to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public' " (quoting Arrow Air, 645 So. 2d at 424)).  The White court also looked to Florida cases that addressed the definition of "law, rule or regulation" in section 448.102(3), such as New World Communications of Tampa, Inc. v. Akre, 866 So. 2d 1231, 1233 (Fla. 2d DCA 2003), and Tyson v. Viacom, Inc., 760 So. 2d 276, 277 (Fla. 4th DCA 2000).

In the definition section of the FWA it provides that " '[l]aw, rule, or regulation' includes any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business."  § 448.101(4).  Thus, it must be a legislatively enacted law, rule, or regulation.  See Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So. 2d 787, 791 (Fla. 2d DCA 2005) (stating that the Rules Regulating the Florida Bar do not fall within the meaning of a rule under the FWA); New World, 866 So. 2d at 1234 (determining that an FCC policy did not qualify as a "law, rule or regulation" under the FWA); Tyson, 760 So. 2d at 277 (stating that the violation of an injunction is not a violation of law under the FWA).  Thus, Florida courts have determined that an employee's belief that a law, rule, or regulation was violated was insufficient under the FWA when the prohibition did not meet the statutory definition of a law, rule, or regulation.

The White court also recognized that element three of an FWA claim regarding the causal link between the adverse employment action and the statutorily protected activity uses the burden shifting analysis applied in Title VII cases, but that

"does not alter the fact that this Court must apply the plain language of the FWA, along with Florida case law interpreting that statute, when determining what constitutes participation in statutorily protected activity." 369 F. Supp. 2d at 1338.

Of course, any ambiguity in a remedial statute like the FWA "should be liberally construed in favor of granting access to the remedy provided by the Legislature." Golf Channel, 752 So. 2d at 565-66 (interpreting notice provision of the FWA). But "[t]he first principle of statutory construction is that legislative intent must be determined primarily from the language of the statute." Id. at 564. When a statute is plain and unambiguous, there is no need for judicial interpretation. Id.

Section 448.102(3), which is the pertinent statutory section here, applies when an employee "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." In contrast, subsection (2) of the same statute specifically applies when an employee provides information to "any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer." § 448.102(2) (emphasis added). And Florida's public whistleblower's act specifically provides that the nature of the information disclosed must include "[a]ny violation or suspected violation of any federal, state, or local law, rule, or regulation." § 112.3187(5)(a), Fla. Stat. (2014) (emphasis added). Thus, in both the private and public whistleblower's acts the Florida Legislature has indicated when an alleged or suspected violation of law is sufficient as opposed to an actual violation of law.

And the White court explained that requiring a plaintiff to prove an actual violation under section 448.102(3) of the FWA promoted its policies "while adequately

protecting the legitimate interests of private employers." 369 F. Supp. 2d at 1338.  The

court explained as follows:

> In contrast to Title VII, which specifically defines the type of
> conduct that can subject an employer to a lawsuit, the FWA
> encompasses a wide array of illegal conduct.  To expand the
> statutory language of the FWA further to provide protection
> for every employee's reasonable belief would be to run afoul
> of the plain language of the statute and to expand beyond
> recognition this limited rule which simply allows employees
> to shed light on their employer's conduct, which is in violation
> of a law, rule or regulation, without fear of retaliation.
> Allowing for the expanded reading of the statute Plaintiff
> proposes would place an onerous burden on the employer to
> anticipate all of its conduct that an employee may
> reasonably believe is proscribed by a law, rule or regulation.
> Even if the employer knows the conduct is perfectly
> legitimate, it would be left with the Hobson's choice of
> terminating the employee and defending suit against the
> employee's reasonable belief or allow[ing] the employee to
> refuse to meet the requirements of the job with no
> consequence.  In apparent recognition of this dilemma the
> legislature declined to include in the relevant section of the
> Act this protection for employees.

Id. at 1338-39.  Based on a plain reading of the FWA and the reasoning in White, we

agree with the Employer that under section 448.102(3) Kearns must prove that he

objected to an actual violation of law or that he refused to participate in activity that

would have been an actual violation of law.  Thus, we are not persuaded by the Fourth

District's opinion in Aery.  However, the issue of which standard applies is not

determinative because we conclude Kearns presented evidence that, when viewed in

the light most favorable to him, establishes an actual violation of the law.[1]

---

[1]Of course, even if the lower standard of Aery applies, we are satisfied
that Kearns' proof at trial meets that standard.

Kearns presented a prima facie case of an actual violation to withstand the motion for directed verdict.  We find guidance for what evidence is required to meet this standard in Canals v. Centro Mater, Inc., 200 F. App'x 881 (11th Cir. 2006).  There, the Eleventh Circuit affirmed the district court's order that set aside the jury's verdict and entered judgment in favor of the employer.  Id. at 883.  The employee alleged a violation of section 448.102 and claimed that she was terminated for refusing to commit perjury.  The employee's FWA "claim failed because she presented *no* evidence on the 'under oath in an official proceeding' element of a perjury claim."  Id.

Thus, Kearns had to prove the elements of a claim for a specific statutory violation.  Therefore, common law fraud would not fall within the definition.  But Kearns maintained that in one instance he was directed to power book a deal and that he refused.  In that instance, he would have to prove that if he had done as directed, it would have been a violation of a statute.  See White, 369 F. Supp. 2d at 1338.

Kearns filed a notice of request for compulsory judicial notice that cited four state statutes and seven federal statutes.  During argument on the Employer's motion for directed verdict, the Employer discussed each of the statutes and argued that Kearns failed to present proof that Charlotte Honda violated any of those statutes.  In response, Kearns argued that he proved statutory violations regarding three specific statutes.  Our review of those statutes shows that he failed to prove a violation of either of the two federal statutes he cited, 18 U.S.C. § 1341 (Supp. 2008), which governs frauds and swindles, and 18 U.S.C. § 1344 (2006), the bank fraud statute.

However, Kearns argued that he proved a violation of section 817.03, Florida Statutes (2008), which prohibits making a false statement to obtain property or

- 12 -

credit, which is relevant to his claims of power booking. Kearns' testimony regarding the practice of power booking provided sufficient evidence of a violation of section 817.03. That statute provides as follows:

> Any person who shall make or cause to be made any false statement, in writing, relating to his or her financial condition, assets or liabilities, or relating to the financial condition, assets or liabilities of any firm or corporation in which such person has a financial interest, or for whom he or she is acting, with a fraudulent intent of obtaining credit, goods, money or other property, and shall by such false statement obtain credit, goods, money or other property, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

At first glance, the statute appears to be directed only to the person who signs the application for credit. But the dealership, as a corporation, is treated as a person under the law. See generally State ex rel. Losey v. Willard, 54 So. 2d 183, 185 (Fla. 1951) ("It is the rule that . . . a corporation may be held criminally liable for acts of misfeasance, malfeasance[,] or nonfeasance."). Therefore under section 817.03, any person, or in this instance any dealership, who makes "any false statement in writing" related to its assets "with a fraudulent intent of obtaining credit, goods, money or other property . . . and . . . by such false statement obtain[s] credit, goods, money or other property" is guilty of a first-degree misdemeanor. Here, Kearns alleged that the dealership intentionally made false statements about its assets—the vehicles—to assist purchasers in obtaining credit to purchase the vehicles in order to create a profit for the dealership, that is, obtaining money for the dealership. We conclude that such conduct is a violation of section 817.03.

Furthermore, even if the statute is deemed to refer only to a purchaser's effort to obtain credit, the dealer is a principal as it has provided the customer the

- 13 -

knowledge and assistance necessary to mislead the lender in evaluating the creditworthiness of the purchaser. See § 777.011, Fla. Stat. (2008) ("Whoever commits any criminal offense . . . or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree."). Kearns presented evidence that the dealership counseled the credit applicants to provide false income and vehicle information and aided those applicants in submitting that information to financial institutions. Had the testimony of Kearns and McDonald been submitted to the jury, it lawfully could have concluded that Kearns refused to participate in conduct that was a violation of the law.

With regard to Charlotte Honda's argument that Kearns needed more specific proof, we disagree with the contention he had to document the particular car and transaction that was in violation of section 817.03. The FWA clearly refers to protecting the individual who refuses to participate in the criminal act. Kearns complained of a specific incident for which he had personal knowledge. He personally knew the features of the car, saw the loan application, and knew the application contained false representations. That testimony is sufficient to at least present the case to a jury.

In any event, once Charlotte Honda fired Kearns, he no longer had the ability to access documentation of specific transactions. To suggest that his evidence is insufficient to go to a jury solely because he could no longer provide this documentation would be to reward an employer for dismissing an employee who did not gather or retain personal copies of the evidence needed to prosecute the crime. This contradicts

the underlying policy of the FWA by failing to protect the employee who objects to an employer's illegal conduct.

Therefore, the facts, taken in the light most favorable to Kearns, support Kearns' position that the dealership was guilty of violating section 817.03. This violation and Kearns' refusal to participate in it satisfy the first prong of Kearns' burden under the FWA. See White, 369 F. Supp. 2d at 1336; see also § 448.102(3).

As to prong three of the test to establish a claim under section 448.102(3), we do not agree with the trial court's conclusion that Kearns failed to establish a causal link between his refusal to participate in power booking and his firing. Kearns testified that in August 2009 he called Del Farmer and complained about fraud issues and was ultimately instructed to meet with general counsel, Jean Brown. Kearns complained to Brown about power booking, among other issues. Brown asked for specific information but would not allow Kearns to show her the files to support his claims. The next day Kearns was fired and escorted out so he could not retrieve his notes. Tracy Farmer directed the general manager "to fire his ass now" and referred to Kearns as a "troublemaker." This testimony, viewed in the light most favorable to Kearns, could support a finding by the jury that a causal connection exists between Kearns' complaints of power booking and his firing. See GEICO, 136 So. 3d at 651.

Because the trial court erred in entering a directed verdict and the issues should have been presented to the jury, we reverse the order granting a directed verdict, together with the final judgment in favor of Charlotte Honda and the order denying Kearns' motion for new trial, and remand for a new trial.

Reversed and remanded for new trial.

- 15 -

DAVIS, C.J., and SLEET, J., Concur.