In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3685

JAMES A. MOLLET,

*Plaintiff-Appellant,*

*v.*

CITY OF GREENFIELD,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:16-cv-01145-LA — **Lynn Adelman**, *Judge.*

ARGUED MAY 23, 2019 — DECIDED JUNE 12, 2019

Before BAUER, MANION, and BRENNAN, *Circuit Judges.*

BAUER, *Circuit Judge.* In this case we must decide whether James Mollet's complaint about a racially charged incident was the but-for cause of his constructive discharge. For the reasons below, we answer in the negative and affirm the decision of the district court.

## I. BACKGROUND

James Mollet began working as a firefighter for the Greenfield Fire Department in 1995. The Greenfield Fire Department had three eight-hour shifts each day and one battalion chief supervised each. Mollet rose through the ranks of the fire department and became a battalion chief in 2009.

In November 2011, John Cohn was appointed chief of the department and George Weber assistant chief. Mollet and Cohn were friendly before he was appointed chief, but following the appointment phone calls and text messages between the two ceased. The relationship was further strained because Mollet felt Cohn's actions as chief were inconsistent with the vision for the department Mollet and Cohn discussed prior to Cohn's promotion.

With that we move to the incident that underpins the theory of Mollet's case. At the end of each shift firefighters stow their gear and bedding and when one fails to do so, other firefighters sometimes prank the offender. On February 17, 2012, firefighter Cesar Hernandez forgot to stow some of his gear. The firefighters in the following shift hung the items from the ceiling and posted a paper sign with a Mexican flag printed on it with the words "Border Patrol" written beneath it. Hernandez did not file a complaint after the incident, but another firefighter who found the incident discriminatory reported it to her superior officer, who reported the incident to Mollet.

Mollet emailed Cohn and Weber later that evening and informed them of the incident. Weber replied:

> Thank you for bringing this to our attention. I
> agree with you 100% that this crosses the line of
> firehouse hazing. Could you do some investigat-
> ing into this incident and report any findings
> back to me. This type of behavior should not
> and will not be tolerated. Please let me know
> what you find out.

Mollet indicated he would rather not investigate the incident
himself, but Cohn emailed that Mollet should investigate
because Cohn did not want to hand the issue over to those
under whose watch it may have occurred.

An individual eventually took responsibility for the
incident and four individuals were disciplined—one lost a day
of vacation and three received verbal reprimands.

In the following months Cohn and Weber were critical of
Mollet's performance. In March 2012, a month after the
incident, Cohn and Weber criticized Mollet's performance in
checking off probationary firefighters on certain tasks. On
April 12, 2012, Weber sent an email critical of Mollet's leader-
ship skills. The following day, Weber informed Mollet that he
would be taking over the lead on rapid intervention team
training. Mollet was later removed from his position oversee-
ing the firefighter internship program after a former intern
improperly listed the fire department as a former employer.

On August 10, 2012, Cohn and Weber met with Mollet,
criticized his communication skills, and asserted that he had
been critical of Weber and Cohn with his fellow firefighters.
On August 31, 2012, Cohn criticized Mollet for issuing com-
mendation letters to public works employees without notifying

him. In November 2012, Cohn criticized Mollet because an EMT he had trained failed to notify the police of a patient's injuries when it appeared they were the result of domestic violence. Cohn also criticized Mollet's leadership and told him in a meeting on November 15 that he needed to change. He also informed Mollet that it may be too late for him to change and that he might be demoted or reassigned.

The following month, Mollet applied for a position in Menomonee Falls. He indicated in his application that he desired an opportunity to take on challenges their fire department presented with its unique structure and potential upgrade of its emergency medical services to the paramedic level. Mollet received a conditional offer of employment from Menomonee Falls on February 4, 2013. On February 8, Mollet met with Cohn and Weber and they indicated that he would be demoted if he did not take the position in Menomonee Falls.

On February 19, 2013, Mollet told Weber he was going to accept the offer from Menomonee Falls which was contingent upon his passing a physical and psychological exam. Mollet received a letter from Cohn accepting Mollet's resignation; Mollet responded stating he would not resign until the contingencies of his future employment were met, but on February 28 Cohn responded that Mollet's employment had terminated on February 24. Mollet was ultimately placed on paid leave until he submitted his letter of resignation on March 23, 2013, and began his employment with Menomonee Falls on March 25.

Mollet filed a complaint in federal court on August 25, 2016, alleging he was retaliated against for opposing discrimination

in the workplace. The gravamen of the complaint is that Mollet was treated poorly and forced to resign as retaliation for complaining about the Hernandez incident. The defendants moved for summary judgment and the district court referred the case to a magistrate judge for a report and recommendation. The magistrate judge recommended the motion be granted and the decision was adopted *in toto* by the district court. The court found summary judgment was appropriate because no reasonable trier of fact could find that reporting the Hernandez incident was the but-for cause of his constructive discharge. Because we agree, we affirm.

## II. DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a district court's grant of summary judgment *de novo* and construe all facts and draw all reasonable inferences in favor of the nonmoving party. *Levitin v. Nw. Cmty. Hosp.*, 923 F.3d 499 (7th Cir. 2019).

Title VII prohibits employers from retaliating against employees for complaining about discrimination. 42 U.S.C. § 2000e-3(a). Mollet argues that the Greenfield Fire Department retaliated against him for complaining about the discriminatory incident involving Hernandez. To establish a *prima facie* case of retaliation under Title VII, Mollet must show: (1) he engaged in a statutorily protected activity, (2) his employer took a materially adverse action against him, and (3) there is a causal link between the protected activity and the adverse action. *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018). The

district court found that Mollet carried his burden on the first two elements, but failed to provide evidence that would lead a reasonable jury to find a causal connection. Because we agree, we will address only the issue of causation.

Mollet asserts the conditions at the fire department rapidly deteriorated after he complained about the Hernandez incident. In Mollet's opinion, this shows complaining was *a* but-for cause of his constructive discharge, implying that several but-for causes may contribute to an adverse employment action. In crafting this argument, Mollet misconstrues the Supreme Court's holding in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013), as well as a footnote from this Court's opinion in *Carlson v. CSX Transportation Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014).

In *Nassar*, the Supreme Court rejected the argument that the causation requirement in Title VII retaliation claims merely requires that plaintiffs show the protected activity was a "motivating factor" in a decision to retaliate against the employee. 570 U.S. at 354. The Court cited *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), which held similar language in the Age Discrimination in Employment Act warranted a finding of but-for causation. *Id.* at 350 (citing *Gross*, 557 U.S. at 176). The Court noted that *Gross* held that "an employer took adverse action because of age meant that age was the reason that the employer decided to act, or, in other words, that age was *the* but-for cause of the employer's decision." *Id.* (emphasis added and internal quotation marks omitted). The dissent pointed out that "[w]hen more than one factor contributes to a plaintiff's injury, but-for causation is problematic" because there can only be one but-for cause of an

action. *Id.* at 384. (Ginsburg, J., dissenting). "When an event is 'overdetermined,' *i.e.,* when two forces create an injury each alone would be sufficient to cause, modern tort law permits the plaintiff to prevail upon showing that either sufficient condition created the harm." *Id.* (Ginsburg, J., dissenting) (citing Restatement (Third) of Torts § 27, at 376–77). The *Nassar* majority did not imagine a regime where plaintiff could merely establish *a* but-for cause: "the proper conclusion here … is that Title VII retaliation claims require proof that the desire to retaliate was *the* but-for cause of the challenged employment action." *Id.* at 352 (emphasis added).

Our opinion in *Carlson* is not contrary. In *Carlson*, we merely explained that factors other than the protected activity could contribute to bringing about an adverse action, but a plaintiff still must prove the protected activity was the but-for cause of the adverse action—that "the adverse action would not have happened without the activity." 758 F.3d 819, 828 n.1 (7th Cir. 2014). Thus, the question in this case is not, as the plaintiffs put it, whether Mollet complaining about the Hernandez incident was *a* but-for cause of the adverse action, rather whether the protected activity was *the* but-for cause of the adverse action. *Heath v. Indianapolis Fire Dep't*, 889 F.3d 872, 874 (7th Cir. 2018). In other words, would Mollet have not been constructively discharged if he did not complain about the Hernandez incident. *Robinson*, 894 F.3d at 834.

Mollet acknowledged during his deposition that he was miserable at work once Cohn became chief in November 2011, three months before the Hernandez incident occurred. As noted above, communication ceased between Cohn and Mollet shortly after Cohn became chief and before the Hernandez

incident. Additionally, Mollet was told by members of his battalion that management was monitoring his performance before the Hernandez incident. Cohn's criticism also began before the Hernandez incident—he called out Mollet for failing to renew his EMT license.

As the district court noted, there is also evidence in the record that Cohn and Weber both responded promptly and positively to Mollet's complaint about the Hernandez incident and agreed that the conduct was unacceptable. Cohn and Weber disciplined four individuals after the investigation was complete. Mollet argues that Cohn and Weber were actually frustrated that Mollet complained about the incident and their response, insistence on an investigation, and eventual discipline of several firefighters was pretextual. In support of this argument Mollet cites evidence in the record that indicates Weber knew of the incident before Mollet reported it. This, Mollet argues, shows that Weber and Cohn planned to do nothing until Mollet complained. But there is no evidence in the record that Cohn or Weber disagreed with Mollet or considered the issue unworthy of investigation. Nor is there evidence that Cohn or Weber were displeased that Mollet brought the issue to their attention. The mere fact that they may have known about the incident before Mollet complained is not evidence that the entire investigation and discipline was pretextual. *See Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (holding that "circumstantial evidence must point directly to a discriminatory reason for the employer's action " and "a plaintiff's subjective beliefs are insufficient to create a genuine issue of material fact"). A reasonable jury could not conclude as much without engaging in speculation.

Mollet also argues the timing of Cohn and Weber's criticism was suspicious because it began less than a month after the Hernandez incident and continued through his constructive discharge nearly a year later. But these events have little in common other than the fact that they occurred after the Hernandez incident. There is nothing that connects them to the Hernandez incident and no evidence indicating that the complaints about Mollet were related to any goal other than improving his job performance. Without more, this evidence provides little support for Mollet's causation argument. *Gracia v. SigmaTron International, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016) (noting that "suspicious timing alone is rarely enough to create an inference of retaliatory motive").

Thus, there is no evidence presented by the plaintiff that could cause a reasonable juror to find that but-for Mollet complaining about the Hernandez incident, Cohn and Weber would not have criticized Mollet for these potential deficiencies in his performance. Furthermore, there is substantial evidence that Mollet's relationship with Weber and Cohn was strained and Cohn had demonstrated a skepticism regarding the sufficiency of Mollet's performance before the Hernandez incident occurred. Because a reasonable jury could not find the causation required in a Title VII retaliation case based on the evidence in the record, we affirm the district court.

## III.  CONCLUSION

Considering all of the above, we affirm the district court's decision to grant summary judgment in favor of defendant.