**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1658
_____

CRAIG D. PRICE,
Appellant

v.

UBS FINANCIAL SERVICES, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-17-cv-01882)
District Judge:  Honorable William J. Martini
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 19, 2023
_____

Before:  GREENAWAY, JR., PHIPPS, and CHUNG, *Circuit Judges*.

(Filed: June 5, 2023)
_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

On February 29, 2016, UBS Financial Services, Inc., a multinational investment

firm incorporated in Delaware with its principal place of business in New Jersey, fired

one of its highest performing financial advisors, Craig D. Price, who had worked at the

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

company's Stuart, Florida, office since 2000. According to UBS, it did so because it found after an independent investigation that Price had violated four of its policies with respect to stock in a company that he had been recommending to clients. But Price, who initiated this suit in federal court in New Jersey under Florida's private whistleblower statute,[1] claims that UBS's reasons were pretextual and that his termination was actually in retaliation for actions he took in 2013 and 2014 related to another UBS financial advisor. On suspicions that the advisor was involved in the misappropriation of funds held in trust for a client then over ninety years old, Price and others at UBS reported him internally and testified before the Financial Industry Regulatory Authority, commonly abbreviated as 'FINRA.'

At the pretrial stages of a case, Florida allows a whistleblower plaintiff, such as Price, to establish a retaliation claim by indirect evidence through a burden-shifting method of proof akin to the *McDonnell Douglas* framework developed by the Supreme Court for Title VII claims. *See Chaudhry v. Adventist Health Sys. Sunbelt, Inc.*, 305 So. 3d 809, 814 (Fla. Dist. Ct. App. 2020); *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 464 (Fla. Dist. Ct. App. 2015); *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 912, 916 (Fla. Dist. Ct. App. 2013). *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To succeed under this method, a plaintiff-employee must first set forth a *prima facie* claim for retaliation by demonstrating that: (i) he engaged in protected activity; (ii) he suffered adverse employment action; and (iii) the two events are causally linked. *See Chaudhry*, 305 So. 3d at 813–14; *Kearns*, 157 So. 3d at 462; *Aery*, 118 So. 3d at 916. The burden then shifts to the defendant-

---

[1] *See* Fla. Stat. § 448.102 (prohibiting employees from taking "retaliatory personnel action"); *see also id.* § 448.101(3) (defining "employer"); *id.* § 448.103 (providing a private cause of action).

employer to rebut that *prima facie* showing by proffering a legitimate, nonretaliatory reason for the adverse employment action. *See Chaudhry*, 305 So. 3d at 814; *Aery*, 118 So. 3d at 916. Finally, the plaintiff may overcome the defendant's proffer with evidence that the defendant's rationale was pretextual. *See Chaudhry*, 305 So. 3d at 814; *Aery*, 118 So. 3d at 916.

This case, as a controversy between citizens of different states with stakes exceeding $75,000, was within the diversity jurisdiction of the District Court. *See* 28 U.S.C. § 1332. After discovery, UBS moved for summary judgment, and the District Court granted that motion. In so doing, the District Court assumed that Price's internal reporting and FINRA testimony qualified as protected activity under the Florida statute. Then after considering the undisputed material facts, it concluded that Price failed to demonstrate the causal connection needed for a *prima facie* claim and to rebut as pretextual UBS's showing of a legitimate, nonretaliatory reason for Price's termination. Price timely appealed that judgment, bringing this matter within this Court's appellate jurisdiction. *See id.* § 1291. On appeal, Price argues that he engaged in protected activity, that there were genuine disputes concerning causation and pretext, and that the District Court erred by not giving due weight to his sworn statement.

On *de novo* review, the causation point is dispositive, even with full consideration given to his sworn statements, so it is unnecessary to address protected activity or pretext.[2] To prevail, Price must establish that he suffered a retaliatory employment action "because" he engaged in one of three forms of statutorily protected activity. Fla. Stat. § 448.102. Generally, a statute's use of the term 'because' signals but-for causation: that

_____

[2] Also, without any causal nexus between UBS's decision to fire Price and his alleged protected activity, the other dispute that Price presents – whether a regional manager or a higher-level supervisor made the decision to terminate his employment – is immaterial, even if genuine.

3

the harm would not have occurred in the absence of the protected activity identified. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351–52 (2013). Accordingly, Florida state courts have construed the private whistleblower statute to require a but-for casual link between protected activity and retaliatory personnel action. *See Chaudhry*, 305 So. 3d at 815–17; *Barone v. Palm Beach Hotel Condo. Ass'n, Inc.*, 262 So. 3d 767, 769 (Fla. Dist. Ct. App. 2018) (per curiam).[3] Although but-for causation may be the ultimate standard, an open question lingers as to whether it must be established "at the *prima facie* stage of the summary judgment analysis" or "at the pretext stage of the analysis." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 n.13 (11th Cir. 2020) (en banc). That issue has divided federal courts,[4] and Florida courts have not definitively resolved that question either.[5] Nonetheless, because Florida has patterned the burden-shifting framework for claims under its private whistleblower statute on the

---

[3] *Accord Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1365 (M.D. Fla. 2016); *cf. Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 258–59 (3d Cir. 2017) (determining that the Supreme Court's decision in *Nassar* requires plaintiffs ultimately to prove Title VII retaliation "according to traditional principles of but-for causation" (quoting *Nassar*, 570 U.S. at 360)).

[4] *Compare López-Hernández v. Terumo P.R. LLC*, 64 F.4th 22, 31–32 (1st Cir. 2023) (requiring a showing of but-for causation as part of the *prima facie* case), *Schottel v. Neb. State Coll. Sys.*, 42 F.4th 976, 983–84 (8th Cir. 2022) (same), *Mollett v. City of Greenfield*, 926 F.3d 894, 896–97 (7th Cir. 2019) (same), *EEOC v. Ford Motor Co.*, 782 F.3d 753, 770 (6th Cir. 2015) (en banc) (same), *and Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (same), *with Gogel*, 967 F.3d at 1135 n.13 (assuming that the but-for standard applies at the pretext stage), *Garcia v. Prof. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (requiring a showing of but-for causation at the pretext phase), *Carvalho-Grevious*, 851 F.3d at 258–59 (same), *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250–51 (4th Cir. 2015) (same), *and Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (same).

[5] *See Mitchell v. Young*, 309 So. 3d 280, 285 n.2 (Fla. Dist. Ct. App. 2020) (declining to resolve the issue of whether a plaintiff must prove but-for causation at the *prima facie* or pretext phase of retaliation claim under Florida civil rights law); *Griffin v. Deloach*, 259 So. 3d 929, 932 n.4 (Fla. Dist. Ct. App. 2018) (declining to determine the *prima facie* causation standard under Florida's public sector whistleblower statute).

4

*McDonnell Douglas* framework for Title VII retaliation,[6] Florida courts would likely follow Eleventh Circuit jurisprudence.[7] *See State v. Jackson*, 650 So. 2d 24, 27 (Fla. 1995) ("[A] long-standing rule of statutory construction in Florida recognizes that if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as given to the federal act in the federal courts."). And to satisfy the causation prong of the *prima facie* Title VII retaliation claim, the Eleventh Circuit has required only a showing that the protected activity and the adverse employment action are not "wholly unrelated." *Gogel*, 967 F.3d at 1135. Indeed, several Florida courts apply that same approach to retaliation claims under Florida law. *See, e.g.*, *Kogan v. Israel*, 211 So. 3d 101, 108 (Fla. Dist. Ct. App. 2017) (public sector whistleblower statute); *Fla. Dep't of Child. & Fams. v. Shapiro*, 68 So. 3d 298, 306 (Fla. Dist. Ct. App. 2011) (same); *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1132–33 (Fla. Dist. Ct. App. 2003) (same); *see also Chaudhry*, 305 So. 3d at 814 n.1 (explaining that a similar analysis governs Florida's public and private whistleblower statutes (citing *Kearns*, 157 So. 3d at 462)). But even using this more lenient standard for

---

[6] *See Chaudhry*, 305 So. 3d at 813 ("Although the Whistle Blower's Act is a Florida statute, it is a member of a family of employment legislation that originated as or was patterned after federal enactments, viz, Title VII of the Civil Rights Act of 1964."); *see also Kearns*, 157 So. 3d at 464; *Aery*, 118 So. 3d at 912.

[7] *See generally West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) (stating that federal courts applying state law are "to ascertain from all the available data what the state law is," including intermediate appellate state court decisions, and to "apply it rather than to prescribe a different rule"); *Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018) ("In the absence of a definitive ruling by a state's highest court, we must predict how that court would rule if faced with the issue. In so doing, we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions, considered *dicta*, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." (quoting *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011))).

the showing of causation needed for a *prima facie* claim, Price's circumstantial evidence would fall short.

The timing of Price's firing does not suggest a causal connection because that timing is not unusually suggestive of retaliatory animus. *See Kogan*, 211 So. 3d at 108 ("Close temporal proximity between the protected activity and the adverse employment action can show that the two events were not wholly unrelated." (quoting *Shapiro*, 68 So. 3d at 306)); *see also Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015). Price first shared his suspicions about his coworker in April 2013, and he testified before FINRA in July 2014. But he was fired on the last day of February 2016 – nearly three years after his first internal reports and over a year and a half after his FINRA testimony. Delays of those lengths cut against finding unusually suggestive timing. *See Shapiro*, 68 So. 3d at 305–06 (explaining that to make a *prima facie* showing, "[i]f there is a substantial delay between the two events, the plaintiff must present other evidence tending to show causation"); *cf. Kogan*, 211 So. 3d at 108 (finding a jury could infer causation when employee was transferred the same day); *Kearns*, 157 So. 3d at 467 (finding a jury could infer causation from one-day delay).

Other events similarly undercut any causal linkage between Price's allegedly protected conduct and his firing. Three other UBS employees also internally reported the other financial advisor's alleged misconduct and later testified before FINRA, but none were fired. And, after two of Price's clients complained about his trading in certain stock, UBS investigated and concluded that the investments were appropriate for those clients' risk profiles. Nevertheless, the complaints generated broader concerns at UBS about Price's conduct relating to those trades, and UBS retained outside counsel to investigate. The ensuing independent investigation concluded that Price had violated

6

four company policies – those regarding communications with the media, solicitation for certain types of high-risk securities, solicitation for penny stocks under any circumstances, and insider trading by persons with unpublished price sensitive information. Only after that investigation did UBS terminate Price, further undermining any inference of a connection between Price's allegedly protected actions and his firing.

To demonstrate that UBS was seeking to retaliate against him, Price asserts that UBS's regional compliance officers treated him more harshly than they did other financial advisors. In his declaration, Price avers that those compliance officers made his team revise marketing seminar invitations and, later, marketing presentations. Also, according to Price, the compliance officers prevented him from sponsoring a benefit luncheon. But that type of supervision in a climate of increasing regulatory oversight, is hardly a footprint of retaliatory animus, especially without any evidence that any of those compliance officers were responsible for the decision to terminate Price's employment.

For these reasons, Price has failed to produce circumstantial evidence of the causal connection needed for a *prima facie* case under Florida's private whistleblower statute.[8] And without making that required showing, Price's claim cannot survive summary judgment. On that basis, we will affirm the judgment of the District Court.

---

[8] Even if Price were deemed to have satisfied the causation requirement of the *prima facie* phase, his claim would still fail at the pretext stage of the burden-shifting analysis because there he would have to establish but-for causation, *see Gogel*, 967 F.3d at 1135 n.13, and his evidence falls well short of that standard.