VILLANTI, Judge.
Palmcrest Homes of Tampa Bay, LLC; Palmcrest Homes of Tampa Bay-II, LLC; Palmcrest Homes of Tampa Bay-Ill, LLC; Palmcrest Homes of Tampa Bay- *1171 IV, LLC; Palmcrest Homes of Tampa Bay-V, LLC; Palmcrest Homes of Tampa Bay-VI, LLC; Palmcrest Homes of Tampa Bay-VII, LLC; Palmcrest Homes of Tampa Bay-VIII, LLC; Palmcrest Homes of Tampa Bay-IX, LLC; Palmcrest Homes of Tampa Bay-X, LLC; and Palm-crest Homes of Tampa Bay-XI, LLC (collectively Palmcrest), CTS Equities Limited Partnership, and Chris Sullivan (collectively Appellants) appeal the trial court’s order that denied their “motion to determine arbitrability,” thus effectively referring their claims and counterclaims against Bank of America, N.A. (BOA) to arbitration while allowing BOA’s foreclosure action to continue in litigation. Because we cannot determine whether the trial court actually decided the threshold issues raised by Appellants before referring the parties to arbitration, we reverse and remand for further proceedings.
The factual background of this appeal is somewhat complex.[1] Palmcrest is a group of companies formed by Alex Sullivan and a friend of his to purchase and develop land and construct single and multifamily residences. CTS Equities is a limited partnership essentially controlled by Chris Sullivan, Alex’s father. When Palmcrest was first formed, CTS Equities provided a line of credit to Palmcrest to enable it to purchase and begin development of various parcels of land. This line of credit from CTS Equities to Palmcrest was primarily funded by a line of credit BOA had previously issued to CTS Equities.
Palmcrest soon needed funds in excess of what CTS Equities was willing to provide. At that point, Palmcrest sought a revolving line of credit from BOA to continue to fund land acquisition, development, and construction. BOA agreed to issue the revolving line of credit, and BOA and Palmcrest entered into a “Master Agreement for Revolving Line of Credit,” together with a promissory note, mortgage, and security agreement. The Master Agreement contained an arbitration agreement that applied to all disputes between BOA and Palmcrest, including disputes concerning whether a specific dispute was “arbitrable.”
As one of the conditions for issuing the revolving line of credit to Palmcrest, BOA required CTS Equities to sign a subordination agreement. This agreement subordinated the amounts Palmcrest owed to CTS Equities under its prior line of credit to those amounts Palmcrest would owe to BOA under BOA’s revolving line of credit. CTS Equities agreed to this condition and signed the subordination agreement. While the subordination agreement was referenced in the Master Agreement between BOA and Palmcrest and was included in the closing documents on the line of credit from BOA to Palmcrest, CTS Equities was not a party to the Master Agreement, and the subordination agreement signed by CTS Equities did not contain an arbitration agreement.
Prior to the formation of Palmcrest, Chris Sullivan had a long-term banking relationship with BOA and a newer banking relationship with BOA’s subsidiary, the Private Bank. Services provided by the Private Bank included analyzing the client’s financial assets, liabilities, and cash flows and advising the client concerning the best means to preserve and enhance the client’s wealth. Sullivan paid the Private Bank substantial fees for these advisory services. During the negotiations *1172 leading up to BOA issuing the revolving line of credit to Palmcrest, Sullivan allegedly relied on the advice of employees of the Private Bank and BOA concerning potential members and officers of Palmcrest, and he invited new members and appointed the CEO of Palmcrest based on the recommendations of these BOA employees. In addition, Sullivan allegedly relied on the recommendations of employees of the Private Bank and BOA concerning financing strategies that would protect Sullivan’s existing investment in Palmcrest while still allowing Palmcrest to purchase and develop additional property. However, soon after Palmcrest closed on the revolving line of credit, disputes arose between the BOA-recommended CEO of Palmcrest and Appellants concerning how the funds were to be used, and Appellants began to suspect that the BOA-recommended CEO was diverting funds for his own purposes. Further, Sullivan came to believe that certain last-minute changes to the terms of the revolving line of credit were made to his detriment.
These disputes initially led Sullivan to bring an action against BOA for breach of fiduciary duties relating to the formation of Palmcrest and the structure and funding of Palmcrest’s revolving line of credit. Sullivan alleged that these fiduciary duties sprang from his long-term relationship with BOA. Sullivan filed his initial lawsuit in state court; however, BOA subsequently removed it to federal court. Once the action was in federal court, BOA and Sullivan began to engage in discovery related to the merits of Sullivan’s claims.
While Sullivan’s individual action against BOA was pending in federal court, BOA brought this foreclosure action in state court against Palmcrest and CTS Equities, seeking to foreclose on the revolving line of credit. Palmcrest and CTS Equities filed counterclaims that alleged essentially the same breaches of fiduciary duties that were alleged in Sullivan’s individual action against BOA. In an effort to consolidate the litigation, Sullivan dismissed his individual federal court action and sought to intervene in the state court foreclosure action. The trial court granted Sullivan’s motion to intervene, and Sullivan subsequently raised intervenor claims in the foreclosure action virtually identical to those that had been pending in his federal court action and to those already alleged as counterclaims by Palmcrest and CTS Equities in the foreclosure action.
When Palmcrest and CTS Equities first filed their counterclaims in the foreclosure action, BOA initiated arbitration proceedings based on the arbitration agreement in the Master Agreement. After Sullivan was permitted to intervene, BOA sought to add Sullivan’s claims to the arbitration proceeding. Appellants opposed the referral of their claims and counterclaims to arbitration, and they filed a motion to determine arbitrability of their claims and counterclaims.
In their motion, Appellants asked the trial court to “determine the arbitrability of the Counterclaim and third party Intervention Complaint” against BOA, raising three threshold issues. First, Palmcrest argued that it should not be compelled to arbitrate because BOA had waived its right to arbitrate by its active participation in the pending foreclosure action as well as in the earlier federal action with Sullivan. Second, Palmcrest argued that the arbitration agreement in the Master Agreement should not be enforced because it was unconscionable. Third, CTS Equities and Sullivan argued that they could not be compelled to arbitrate because they were not parties to the Master Agreement or any other arbitration agreement with BOA that applied to the disputes at hand. Appellants argued that these threshold issues *1173 should be decided by the court prior to any referral to arbitration. BOA, on the other hand, argued that because the Master Agreement referred any disputes concerning the arbitrability of a specific dispute to the arbitrators, the court should simply refer the entire matter to the arbitrators for resolution of the threshold issues as well as the merits of the disputes.
During a two-day hearing on the motion, Appellants argued the merits of the threshold issues they raised while BOA argued that these threshold issues should be decided by the arbitrators. At the conclusion of the hearing, the trial court took the matter under advisement. A week later, it rendered a “fill-in-the-blank” form order that simply denied the motion to determine arbitrability, thus effectively ordering Appellants to arbitration on all of their claims and counterclaims. Appellants moved for rehearing and specifically requested that the trial court clarify its ruling to show whether it had decided the merits of the threshold issues or whether it had referred those issues to the arbitrators; however, the trial court denied the motion for rehearing without explanation. Appellants now seek review of the trial court’s order, contending that the trial court erred either by referring the matter to arbitration without deciding the threshold issues they raised or by deciding those threshold issues adversely to them.[2]
Under Florida law, each of the threshold issues raised by Appellants should have been decided on their merits by the trial court before any referral of the claims and counterclaims to arbitration. On the threshold issue of waiver, Florida law requires the trial court — not the arbitrators — to determine whether a party has waived the right to arbitrate. See Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999) (“Under both federal statutory provisions and Florida’s arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.”); see also Fla. Educ. Ass’n/United v. Sachs, 650 So.2d 29, 30 (Fla.1995) (“[W]e hold that a trial court may determine whether parties to an arbitration agreement have, by their subsequent conduct, waived their contractual right to arbitration.”); Kel Homes, LLC v. Burris, 933 So.2d 699, 705 (Fla. 2d DCA 2006); City of Jacksonville v. Cowen, 973 So.2d 503, 507 (Fla. 1st DCA 2007) (“Florida courts have generally echoed the proposition that the court, rather than the arbitrator, determines whether or not a party has waived arbitration.”); ARI Mut. Ins. Co. v. Hogen, 734 So.2d 574, 575 (Fla. 3d DCA 1999) (“[W]e reaffirm our long standing position that the question of whether arbitration has been waived is one for the trial court to determine.”). While we recognize that some federal courts have held to the contrary and have referred waiver issues to the arbitrators, controlling Florida authority requires the trial court to decide this threshold issue.
Likewise, both federal and Florida law require the trial court — not the arbitrators — to determine the threshold issue of whether an arbitration agreement, as opposed to a contract as a whole, is unconscionable. See, e.g., Rent-A-Center, W., Inc. v. Jackson, — U.S. —, —, 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403 (2010); Buckeye Check Cashing, Inc. v. *1174 Cardegna, 546 U.S. 440, 445-46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Prima Paint Corp. v. Flood & Conklin Mfg., Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); ATP Flight Sch., LLC v. Sax, 44 So.3d 248, 252 (Fla. 4th DCA 2010). Finally, the trial court — not the arbitrators — must determine the threshold issue of whether a nonparty to an arbitration agreement is bound to arbitrate a specific dispute. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-46, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (holding that a court should decide whether an arbitration provision binds an entity that did not sign the agreement); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (citing First Options with approval); cf. Stalley v. Transitional Hosps. Corp. of Tampa, Inc., 44 So.3d 627 (Fla. 2d DCA 2010) (discussing at length the issues the trial court must consider when determining whether a non-party could be compelled to arbitrate).
Unfortunately, in this case it is impossible for us to determine from the trial court’s minimalistic “fill-in-the-blank” order whether it considered the merits of these threshold issues and decided them adversely to Appellants, as argued by BOA, or whether the trial court decided not to decide and referred these threshold issues to the arbitrators, as argued by Appellants. Given the arguments made at the hearing, either interpretation of the trial court’s order is equally plausible. Accordingly, we must reverse the order and remand for further proceedings. On remand, the trial court must decide these threshold issues on their merits if it has not already done so. The decision on those threshold issues will determine whether referral of the parties’ claims and counterclaims to arbitration is proper. Any order entered on remand must explain the trial court’s rulings sufficiently to facilitate further review should such be sought by either party.
Reversed and remanded for further proceedings in accordance with this opinion.
NORTHCUTT and CRENSHAW, JJ„ Concur.

. The details of the financial transactions underlying the dispute in this case are quite complex, but most of the details are unnecessary to our determination of the issues in this appeal. We have endeavored to present only the facts necessary for an understanding of our resolution of the dispute actually before us.

. Because the effect of the order is to determine that BOA is entitled to arbitrate Appellants' claims and counterclaims, we have jurisdiction to review this nonfinal order. See Fla. R. App. P. 9.130(a)(3)(C)(iv).