Artau, Edward L., Associate Judge.
Jeffery Kogan, a law enforcement officer, sued his employer, Scott Israel as Sheriff of Broward County (“BSO”), under section 112.3187, Florida Statutes (2013) (the “public Whistle-blower’s Act”). In his complaint, Kogan alleged that he was demoted from a homicide detective to a road patrol deputy after he reported an instance of possible excessive use of force by the Fort Lauderdale Police Department (“FLPD”) and assisted with the ensuing investigation. The matter proceeded to trial and the jury found in Kogan’s favor. Following the verdict, BSO moved for a new trial claiming juror misconduct. The court granted BSO’s motion, and Kogan appeals. BSO cross-appeals, challenging the sufficiency of the evidence supporting the jury’s verdict. We affirm in all respects.
Background
The evidence at trial established that Kogan witnessed a FLPD officer release a canine on a suspect during a joint apprehension effort involving BSO and FLPD. At the time the canine was released, the suspect was sitting with his hands behind his back. Kogan could not tell if the suspect was handcuffed, but due to the suspect’s position, was concerned that the canine deployment may have been inappropriate. Kogan expressed his concerns to his immediate supervisor on the scene pursuant to BSO’s chain of command policy, but felt that the issue got shrugged-off. His supervisor, on the other hand, testified that Kogan did not adequately convey his concerns and instead only expressed frustration over the fact that the dog bite caused the suspect to go to the hospital instead of to the police station for an interview.
A few days after the suspect was arrested, Kogan ran into the state attorney assigned to the case. Kogan expressed his concern over the use of the canine to the state attorney, who in turn, contacted the state’s special prosecutions unit. Eventually, special prosecutions contacted the Florida Department of Law Enforcement (“FDLE”) which began investigating the matter. As part of its investigation, FDLE called Kogan and asked him to come in for a recorded statement. Kogan called his supervisor and informed him of FDLE’s request. The next day, Kogan’s supervisor summoned Kogan to a meeting with the homicide command staff.
At that meeting, Kogan’s command staff asked Kogan to fill them in on the events leading up to the FDLE investigation. Ko-gan reiterated his concerns, his communications with the supervisor at the scene, and his encounter with the state attorney. Kogan’s captain testified that he made the decision to transfer Kogan at that meeting. However, Kogan was not immediately notified of this decision and instead, was told that he would be removed from the homicide rotation until things “cooled down.” Kogan gave a statement to FDLE. A few weeks later, he was summoned by FDLE to provide a second statement. The day he provided the second statement, Kogan received an email notifying him that he was being transferred out of homicide to road patrol. Kogan was given four days’ notice of the transfer and was not debriefed pursuant to the procedure set forth in BSO’s policy manual. The only explanation Kogan was given for the transfer was that the homicide department “was going in a different direction.”
Prior to Kogan’s statement to FDLE, he had nothing but positive performance evaluations. He also was selected to represent *105 his department in a national TV show which documented the homicide investigation process. Kogan continued to work on the TV show after he was removed from the the homicide rotation. After Kogan filed his lawsuit, BSO asserted that Kogan was transferred because Kogan did not properly document the canine incident causing the homicide command staff to “lose faith” in him.
The jury found that Kogan proved by the greater weight of the evidence that his disclosure and/or participation in the FDLE investigation was “the substantial motivating cause that made a difference in BSO’s decision to demote/transfer Kogan from a homicide detective to a deputy road patrol.” It further found that BSO offered a legitimate, non-retaliatory reason for demoting/transferring Kogan, but that Ko-gan proved by the greater weight of the evidence that BSO’s stated reason was a pretext for retaliation.
BSO then moved for a new trial and a judgment notwithstanding the verdict (“JNOV”). As grounds for a new trial, BSO asserted that after the jury rendered its verdict, it learned that one of the jurors, Juror 3, failed to disclose that her son had been arrested despite being asked about her family’s arrest history on the juror questionnaire. As grounds for a JNOV, BSO argued that Kogan did not prove he participated in a protected activity as he did not “blow the whistle on his employer.” Additionally, BSO argued that Kogan failed to offer evidence establishing a causal connection between the protected activity and his transfer, or proving that BSO’s legitimate, non-retaliatory reason for transferring Kogan was a pretext.
The court conducted an evidentiary hearing on the juror misconduct issue where it examined the voir dire transcript and interviewed Juror 3. Following the hearing, the court granted BSO’s motion for a new trial. It later entered an order denying BSO’s motion for JNOV.
Analysis

a) Order Granting New Trial

“The standard of review of a trial court’s order granting a new trial because of juror concealment of information is abuse of discretion. If reasonable people could differ as to the propriety of the court’s ruling, then the abuse of discretion standard has not been met.” Hoang Dinh Duong v. Ziadie, 125 So.3d 225, 227 (Fla. 4th DCA 2013) (quotations omitted).
The Florida Supreme Court has outlined a three part test for determining whether a juror’s nondisclosure of information during voir dire warrants a new trial. De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla. 1995). “First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party’s lack of diligence.” Id.
“Courts evaluate materiality based on the ‘circumstances of each case’ using the following test: ‘Nondisclosure is considered material if it is substantial and important so that if the facts were known, the [moving party] may have been influenced to peremptorily challenge the juror from the jury.’ ” Pembroke Lakes Mall Ltd. v. McGruder, 137 So.3d 418, 428 (Fla. 4th DCA 2014) (quoting Roberts ex rel. Estate of Roberts v. Tejada, 814 So.2d 334, 341 (Fla. 2002)).
Kogan argues that BSO was not entitled to a new trial because it failed to establish that Juror 3’s nondisclosure was material to her jury service. Kogan’s position is based on the fact that four of the six jurors selected indicated either they or a *106 family member had been arrested, two of whom were not asked questions by either side about their answers. Kogan maintains that if the arrest information was indeed material, BSO would have used its peremptory strikes on these jurors, or at the very least, made sure to question each of them about their answer. Kogan’s argument is reasonable. However, we must affirm if a reasonable person could also take the view adopted by the court.
The court ruled that Juror 3’s nondisclosure was material because:
The record reveals that the [BSO’s] focus during voir dire was to inquire into and learn of the prospective jurors’ feelings toward law enforcement. Specifically, [BSO] sought to obtain information regarding any bad experiences the prospective jurors may have had with law enforcement, including: (1) arrests; (2) whether any were a victim of a crime; and (3) whether any had friends or family members who were or are employed in law enforcement. Juror No. 3’s failure to disclose her son’s arrests prevented [BSO] from inquiring into the circumstances of the arrests and her feelings towards law enforcement as a result of these arrests. In fact, Juror No. 3’s nondisclosure led [BSO] to believe that Juror No. 3 harbored no negative feelings toward law enforcement. The court finds that Juror No. 3’s nondisclosure was further compounded by her disclosure .that two of her children are employed by BSO, and that they are happy with their assignments within the agency.
Second, the fact that Juror No. 3 sat through approximately three (3) hours of voir dire while both sides asked questions as to whether any prospective jurors had any bad experiences with law enforcement (e.g, employment related, friends or family of law enforcement, victims of crimes, arrests), without saying a word, raising her hand, or disclosing that her son had been arrested twice, does not sit well with this Court.
The court’s findings are supported by ■ the record, which establishes that almost every question posed during voir dire by either side concerned law enforcement in some shape or form. When viewed in its entirety, it is clear that the parties’ main goal during voir dire was to decipher whether any of the panel members held biases towards law enforcement. Under these circumstances, a reasonable person could certainly take the view that Juror 3 failed to disclose material information. Accordingly, we find that the court did not abuse its discretion in granting a new trial.

b) Denial of BSO’s Motion for JNOV

A trial court’s ruling on a motion for JNOV is reviewed de novo. Kurnow v. Abbott, 114 So.3d 1099, 1101 (Fla. 1st DCA 2013). “A JNOV is appropriate only in situations where there is no evidence upon which a jury could rely in finding for the non-movant. A jury verdict must be sustained if it is supported by competent substantial evidence.” Hancock v. Schorr, 941 So.2d 409, 412 (Fla. 4th DCA 2006) (internal citation omitted).
Florida’s public Whistle-blower’s Act prevents retaliatory action against employees and persons who disclose certain types of government wrongdoing to appropriate officials. See § 112.3187(2)-(7), Fla. Stat. (2013). To establish a prima facie case for retaliation under the public Whistle-blower’s Act, a plaintiff must demonstrate that: “(1) the plaintiff engaged in statutorily protected expression; (2) the plaintiff suffered an adverse employment action; and (3) there is some causal connection between the two events.” Rustowicz v. N. Broward Hosp. Dist., 174 So.3d 414, 419 (Fla. 4th DCA 2015).
*107 As grounds for a JNOV, BSO argued that Kogan did not prove he participated in a statutorily protected activity as he did not “blow the whistle on his employer,” Additionally, BSO argued that Kogan failed to offer evidence establishing a causal connection between the protected activity and his transfer, or proving that BSO’s legitimate, non-retaliatory reason for transferring Kogan was a pretext.

i) Textual Interpretation of the Statute and its Applicability

The public Whistle-blower’s Act prohibits an agency or independent contractor from either dismissing, disciplining, or taking any adverse personnel action against an employee, or taking adverse action that affects the rights or interests of a person for the employee’s or person’s disclosure of certain information. § 112.3187(4)(a)-(b), Fla. Stat. (2013). The “information” disclosed must concern:
(a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public’s health, safety, or welfare.
(b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.
§ 112.3187(5), Fla. Stat. (2013).
Pertinent to this case, “employees and persons ... who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity” are protected under the public Whistle-blower’s Act. § 112.3187(7), Fla. Stat. (2013).
Although there is no dispute that Kogan was requested to participate in an FDLE investigation and, as part of that investigation, disclosed a “suspected violation” of a law which may have created a danger to the public’s health, safety, or welfare, BSO maintains that Kogan’s activity was not protected because the disclosed information did not pertain to his employer, BSO. As Justice Canady aptly explained, courts must look to the plain language of a statute when construing it. State v. Hackley, 95 So.3d 92, 93 (Fla. 2012). Here, the court need only look to the text of the public Whistle-blower’s Act in rejecting BSO’s argument.
The public Whistle-blower’s Act does not require that the disclosed information concern the disclosing party’s employer. The text provides, in part, that the nature of the information disclosed must include “[a]ny violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public’s health, safety, or welfare.” § 112.3187(5)(a), Fla. Stat. (2013) (emphasis added). There is nothing in the text which limits the nature of the disclosed information to information concerning the discloser’s own agency. Instead, “agency” is specifically defined in the text of the statute as “any state, regional, county, local, or municipal government entity, whether executive, judicial, or legislative; any official, officer, department, division, bureau, commission, authority, or political subdivision therein; or any public school, community college, or state university.” § 112.3187(3)(a), Fla. Stat. (2013) (emphasis added). Clearly, this includes the full spectrum of Florida state and local government and is not limited to the particular *108 agency that employs the Whistle-blower. If it were so, the legislature would have told us when they defined what they meant by an “agency”, or otherwise in the text of the statute.
BSO cites Castro v. School Board of Manatee County, for the proposition that: “[t]he FWA [public Whistle-blower’s Act] does not protect an employee who is complaining about the actions of another agency or third party,” 903 F.Supp.2d 1290, 1303 (M.D. Fla. 2012). As a federal trial court order, it is not binding on this court. Moreover, it is in conflict with the text of the public Whistle-blower’s Act. In support of its reasoning, the Middle District cited to a Third District case, Juarez v. New Branch Corp., 67 So.3d 1169 (Fla. 3d DCA 2011). However, Juarez interpreted Florida’s private Whistle-blower’s Act. Id. at 1160. The private Whistle-blower’s Act differs from the public Whistle-blower’s Act and plainly limits its protection to an “employee” who has disclosed, objected to, refused to participate in or provided information in connection with an investigation about “an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation.” § 448.102, Fla. Stat. (2013) (emphasis added). As discussed in greater detail above, unlike the private Whistle-blower’s Act, the public Whistle-blower’s Act expands its coverage to disclosures and investigations involving an agency as defined in the statute; not just that of the employing agency. The legislature could have likewise limited the application of the public Whistle-blower’s Act to that of the employing agency. It chose not to do so. It is axiomatic that the text of a statute governs its applicability. Accordingly, we reject BSO’s argument and decline to follow Castro.

ii) Causal Connection

In addition to its statutory argument, BSO maintains that Kogan failed to meet the causal connection element for a Whistle-blower cause of action. “Causation may be proved by direct or circumstantial evidence,” Rustowicz, 174 So.3d at 425, “[T]he typical [Whistle-blower’s] case relies upon circumstantial evidence of causation.” Id. “Close temporal proximity between the protected activity and the adverse employment action can show that the two events were not wholly unrelated”. Fla. Dep’t of Children & Families v. Shapiro, 68 So.3d 298, 306 (Fla. 4th DCA 2011).
There was evidence before the jury that the morning after Kogan notified his supervisor that he was summoned to give a statement to the FDLE, his supervisor asked Kogan to report to the station to meet with the homicide command staff. During that meeting, Kogan was asked to outline what he saw during the arrest. Kogan’s captain admitted on the stand that as a result of that meeting, he made a decision to transfer Kogan. Kogan was notified of his transfer on the same day he was summoned to provide a second statement to FDLE. Taken in the light most favorable to Kogan, this evidence supports the jury’s finding that a causal connection existed between Kogan’s participation in the FDLE investigation and his transfer. See Kearns v. Farmer Acquisition Co., 157 So.3d 458, 467 (Fla. 2d DCA 2015) (reversing directed verdict entered in favor of employer in private Whistle-blower’s claim because employee who was terminated the day after he provided protected information presented sufficient evidence of a causal connection to send the issue to the jury).

Hi) Pretext

Next, BSO argues that Kogan failed to prove that BSO’s reason for transferring Kogan was a pretext. BSO *109 presented evidence establishing that BSO’s proffered reason for transferring Kogan was that his command staff “lost faith in him” due to his failure to properly document and report what he perceived to be a possible crime. Thus, the burden shifted to Kogan to prove that BSO’s proffered reason was a pretext. See Rice-Lamar v. City of Fort Lauderdale, 853 So.2d 1125, 1133 (Fla. 4th DCA 2003) (once the employer has proffered a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts to the plaintiff to prove “by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct.” (quotation omitted)).
“Pretext is established ‘either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered explanation is unworthy of credence.’” Valenzuela v. GlobeGround N. Am., LLC, 18 So.3d 17, 25 (Fla. 3d DCA 2009)[1] (quoting Tex. Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). “[T]o show that the employer’s reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence.” Id. (quotations omitted).
“When the employer’s reasons are shown to be false, this provides circumstantial evidence probative of intentional discrimination.” City of Hollywood v. Hogan, 986 So.2d 634, 645 (Fla. 4th DCA 2008).[2] Even when the employer’s proffered reason is not completely false, however, the plaintiffs case does not necessarily fail. Id. at 645-46. “[T]he lack of falsity [does not] demand a verdict in favor of the employer where other evidence could persuade the trier of fact of discriminatory intent.” Id. at 646.
Kogan presented sufficient evidence to adequately call the credence of BSO’s proffered reason for his transfer into question. Specifically, he established that BSO did not follow its own protocol for poor performance, thus calling into question whether BSO truly believed Kogan failed to properly report the incident. For example, Kogan presented evidence that his failure to report the incident was not raised in his annual evaluation. Indeed, by all accounts his evaluations were all positive. Kogan further presented evidence that he was permitted to represent BSO as a homicide detective in a national television show after his captain allegedly “lost faith in him.” Additionally, BSO’s transfer policy delineated that “[t]ransfer will be made with appropriate notification, evaluation and debriefing. Employees may only transfer to the same classification.” However, Kogan was only given four days’ notice of his transfer and was not debriefed. Kogan’s captain admitted that he did not discuss the transfer with Kogan in any degree of detail and simply told him that “the agency was moving in a different direction.” When asked why he failed to discuss or memorialize any part of his decision, Kogan’s captain simply stated that he “chose not to.” Based on the foregoing, there was sufficient evidence for the jury to find that BSO’s proffered reason for transferring Kogan was a pretext. Accordingly, the *110 court did not err in denying BSO s motion for JNOV.

Affirmed.

Warner and May, JJ., concur.

. Although Valenzuela, 18 So.3d at 25, was an age discrimination case, it employed a Title VII analysis. See Rustowicz, 174 So.3d at 419 (explaining that Florida courts apply Title VII analysis to Whistle-blower's Act cases).

. Hogan was also an age discrimination case, but as explained in note 1, is instructive.