DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SCHOOL BOARD OF PALM BEACH COUNTY,**
Appellant,

v.

**GARY GROOVER,**
Appellee.

No. 4D20-1547

**GARY GROOVER,**
Appellant,

v.

**SCHOOL BOARD OF PALM BEACH COUNTY,**
Appellee.

No. 4D20-2276

[April 13, 2022]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lisa S. Small, Judge; L.T. Case No. 502015CA012271.

Sean Fahey of Office of General Counsel, School Board of Palm Beach County, West Palm Beach, for School Board of Palm Beach County.

Jennifer S. Carroll of the Law Offices of Jennifer S. Carroll, P.A., Jupiter, and Isidro M. Garcia of Garcia Law Firm, P.A., West Palm Beach, for Gary Groover.

GROSS, J.

The School Board of Palm Beach County appeals a final judgment entered after a jury verdict in favor of Gary Groover in his action under Florida's whistleblower statute. In a consolidated case, Groover appeals a post-trial order denying his motion for equitable relief where he sought

reinstatement to his prior position or, in the alternative, five years of front pay and other benefits.

We affirm the final judgment against the School Board. In Groover's appeal, we reverse in part and remand for a new hearing on the issue of front pay.

### *Introduction*

Groover brought a one-count complaint against the School Board under the Florida Public Sector Whistleblower's Act. *See* §§ 112.3187–112.31895, Fla. Stat. (2014). He alleged that he was demoted from his position as an assistant principal to a teaching position by the principal of Boynton Beach High School in retaliation for his participation in an investigation by the School Board's Office of Inspector General ("IG").

The IG investigation concerned (1) a semi-pro basketball team's lease of the school's gym for basketball games at a reduced rate by using the non-profit certificate of an unrelated entity and (2) the team's use of the gym without a lease.

The case proceeded to a six-day jury trial. Groover presented two witnesses in his case: himself and the IG investigator.

The School Board called four witnesses: (1) a former principal of the high school; (2) the principal who demoted Groover; (3) a witness who conducted a review of the evening programs supervised by Groover; and (4) the School Board's regional superintendent at the time of demotion.

The School Board's evidence painted Groover as a non-performing employee whose demotion had nothing to do with his participation in the IG investigation. The principal testified that the demotion "was based on the performance issues that we had noted throughout the year and the fact that he was on an annual contract."

The School Board took the position that well before the IG investigation the principal did not intend to reappoint Groover as an assistant principal at the end of the school year. Much of that intent was not documented in writing.[1]

---

[1] For example, the principal and the regional superintendent testified that they had a conversation in October 2014, during which the principal communicated his intent not to reappoint Groover as an assistant principal. On cross-examination, the principal was asked if he had anything to document that

2

Groover's position was that the principal falsely accused him to cover up his own neglect, that the principal made him a scapegoat, and that he was punished for telling the truth in the IG investigation.

The jury's verdict found that the School Board demoted Groover because he participated in the IG investigation on January 15, 2015.[2] The jury awarded him $140,000 for lost wages and $30,000 for mental anguish. In a thoughtful ruling, the trial court denied the School Board's post-trial motion for a directed verdict, or in the alternative, for a new trial.

### *Viewing the Facts in the Light Most Favorable to Groover, the Jury Verdict was Supported by the Evidence at Trial*

Florida applies the procedure established by federal Title VII case law to the Whistleblower Act. *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 419 (Fla. 4th DCA 2015).

The trial judge denied the School District's motion for directed verdict at the close of Groover's case. The burden then shifted to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *City of Hollywood v. Hogan*, 986 So. 2d 634, 641 (Fla. 4th DCA 2008). Once the defendant offers such evidence, the *McDonnell Douglas*[3] burden-shifting framework disappears and the "sole remaining issue [is] discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000) (internal quotation marks omitted).

As the United States Supreme Court observed in *United States Postal Service Board of Governors v. Aikens*,

> [W]hen the defendant fails to persuade the district court to
> dismiss the action for lack of a *prima facie* case, and responds

conversation. The principal answered: "That I'm not sure. I may have an e-mail." An exchange followed in which the principal acknowledged that he did not find such an email and he did not recall if such an email existed.

[2] The jury was instructed that to render a verdict in Groover's favor, "you must decide that the School Board would not have demoted Mr. Groover had Mr. Groover not participated in an Inspector General investigation[.]" Thus, the jury necessarily rejected any claim that, absent Groover's participation in the IG investigation, his alleged performance issues would have resulted in his non-renewal.

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption "drops from the case," and the "the factual inquiry proceeds to a new level of specificity."

460 U.S. 711, 714–15 (1983) (internal footnote and citations omitted).

"The plaintiff retains the burden of persuasion." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). The plaintiff must "have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253. "This burden now merges with the ultimate burden of persuading the [factfinder] that [he] has been the victim of intentional discrimination." *Id.* at 256.

"Pretext is established either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kogan v. Israel*, 211 So. 3d 101, 109 (Fla. 4th DCA 2017) (internal quotation marks omitted). "[T]o show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Id.* (internal quotation marks omitted).

"[T]he pretext inquiry focuses on the employer's beliefs and whether the employer was dissatisfied with the employee for nondiscriminatory reasons, 'even if mistakenly or unfairly so.'" *Elver v. Hendry Cnty. Sheriff's Off.*, 791 F. App'x. 56, 58 (11th Cir. 2019) (quoting *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010)). If "the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).

One way to demonstrate pretext is to show that the employer gave "different and arguably inconsistent explanations" for taking the adverse employment action. *McDonough v. City of Quincy*, 452 F.3d 8, 18 (1st Cir. 2006). And pretext can be established with proof that the employer failed to follow its own policies and protocols in connection with an adverse employment action. *See Kogan*, 211 So. 3d at 109.

"Disbelieving a witness's testimony about one of the material facts in a case can justify the trier of fact in disbelieving the witness's contested testimony on other material facts." *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 979 (7th Cir. 2000). An adverse credibility determination as to the ultimate decision maker can provide further support for a finding of discrimination. *See Holland v. Gee*, 677 F.3d 1047, 1063 (11th Cir. 2012) ("Third and finally, we note that the credibility of Chief Deputy Docobo, the ultimate decisionmaker, was heavily challenged at trial, well apart from the fact that there was evidence to rebut his proffered reasons for terminating Ms. Holland. . . . All of this could have been the basis for the jury to make an adverse credibility determination as to Chief Deputy Docobo and thus further supported the finding of discrimination."); *see also Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004).

Viewing the facts in the light most favorable to Groover, we conclude that the jury verdict was supported by the evidence and reasonable inferences that could be drawn from the evidence. This case turned heavily on the credibility of the witnesses, and the jury could have been persuaded that a retaliatory intent more likely motivated the principal's decision or that the principal's proffered explanation was unworthy of credence. For example, the jury could have concluded that the performance issues in certain write-up memos either were rebutted by Groover or would not have motivated a reasonable employer to demote him.

Significantly, the jury could have found that an alleged October 2014 conversation between the principal and the regional superintendent did not happen. The regional superintendent testified that the non-reappointment decision was made in October 2014. The jury could have determined that it was improbable that the non-reappointment decision was made nine months before the end of the fiscal school year. There was no contemporaneous documentation of any October 2014 decision not to reappoint Groover, which the jury could have found unusual in a bureaucracy like the School Board, where so much is documented. The principal's testimony that he "may have sent" an email about the purported decision was significantly impeached on cross-examination.

The jury could have found that if Groover's performance were as bad as the School Board portrayed it, he would have been fired before the IG investigation began. Groover's Annual Contract suggests that he could have been fired in October 2014 without cause. In any event, the

"performance issues" claimed by the School Board, if genuine, would have supported a termination for cause.

Finally, the jury could have found that the principal's credibility was damaged on material issues. There were inconsistencies between his deposition and trial testimony. Moreover, while the School Board relied heavily on a report concerning the night school to demonstrate Groover's "performance issues," the principal did not specifically cite the report in his deposition as a reason why Groover was demoted. The principal's own testimony about why he told Groover to consider looking for a daytime job was based on the impact of night work on Groover's family, not on the nonrenewal of his contract. Because Groover implicated the principal in wrongdoing in the IG investigation, the jury could have concluded that the decision to terminate Groover did not crystalize until after the principal learned of Groover's protected activity in January 2015.[4]

### *The Trial Court Properly Denied the School Board's Motion for New Trial*

On a separate issue, we reject the School Board's contention that it was entitled to a new trial because of improper rebuttal argument. Groover's attorney used language in Groover's employment contract to make an argument. The School Board's objection was that the argument was based on facts not in evidence. The objection was not well taken because the argument was based on Groover's Annual Contract, which was in evidence. In its motion for new trial, the School Board argued for the first time that section 1012.33(1)(b), Florida Statutes (2014), limited the scope of the contract's language. But the contract was in evidence without limitation. And, as the trial court recognized, this statutory argument was not preserved at trial. This and another unpreserved objection to the closing argument (i.e., that Groover improperly waited until his rebuttal closing to raise the argument regarding the contract language) did not amount to fundamental error under *Murphy v. International Robotic Systems, Inc.*, 766 So. 2d 1010, 1031 (Fla. 2000).

---

[4] The School Board argues that Groover failed to establish causation because the principal had already told the IG investigator—the day before she took a statement from Groover—that he had previously written up Groover for leasing noncompliance issues and that he intended to non-renew Groover at the end of the school year. However, the jury still could have found that the principal had not actually made the decision to non-reappoint Groover when he spoke to the investigator, but instead simply told the investigator this to discredit Groover in advance of Groover giving a statement.

### *Groover's Subsequent Appeal of the Post-Trial Order Denying his Motion for Equitable Relief*

Following the entry of the final judgment, Groover moved for equitable relief, seeking reinstatement to his prior position or, alternatively, five years of front pay and benefits, including lost pension accumulation, in lieu of reinstatement. Groover's motion stated that "[i]n accordance with § 112.3187(9)(a), Fla. Stat., the relief 'must include' 'reinstatement of the employee to the same position held before the adverse action was commenced, or to an equivalent position or reasonable front pay as an alternative relief.'"

The School Board opposed Groover's motion. In part, it argued that reinstatement "would be impracticable" in light of Groover's performance issues and his alleged "admission that he knew he was being non-appointed to an assistant principal when [the principal] told him he should start looking for other position[s] . . . ." Further, the School Board argued that Groover's request for front pay should also be denied because he was employed under an annual contract with no expectation of renewal at the expiration of his contract. An award of front pay "would be unconscionable," the School Board asserted, "in light of Plaintiff's documented poor performance as an assistant principal."

Groover filed a supplemental memorandum of law in support of his motion for equitable relief, arguing that (1) reinstatement, not front pay, was the preferred remedy, absent very narrow circumstances not present in this case, and (2) no further hearing was necessary to determine the relief that the court must award.

The trial court held an evidentiary hearing on Groover's motion. At the hearing, Groover requested that he be reinstated to "the position of a night school assistant principal" or, in lieu of that, a regular assistant principal position. Groover speculated that "there are probably a couple hundred of these positions around the County." Groover submitted that there were no special circumstances warranting a denial of reinstatement. However, if the court "were to exercise its discretion in not ordering [him] reinstated," Groover requested five years of front pay at $30,000 per year.

The School Board responded that "[t]his is not a case where we're opposing the reinstatement because of hostility or exceptions." Rather, the School Board opposed the motion for equitable relief because (1) there were no vacancies of assistant principal positions, (2) Groover exhibited "performance issues," (3) Groover was on an annual contract and had no

expectation of continued employment, and (4) awarding Groover five years of front pay would amount to a windfall.

Groover replied that "if the School Board could establish there are no current positions," he would request "that the Court fashion an equitable remedy which requires the School Board to pay [him] front pay until such time as a position becomes available that he can accept . . . ." Groover further argued that the jury verdict had "already disposed of" the School Board's defense that he had "performance issues." Groover announced that he was relying on the trial record and did not have any additional evidence to present.

The School Board presented the testimony of one witness, a regional superintendent with the School District. The witness testified that there were "no current assistant principal positions available in Palm Beach County." The witness explained that "we are currently frozen" and that the School Board had a "massive budget crisis" due to COVID-19. He explained that the School Board was reducing the work force in its main administrative office, so employees of that office who have administrative experience were being moved into assistant principal positions. The witness also pointed out that Groover did not meet the qualifications for an assistant principal in a daytime school.

At the conclusion of the hearing, the parties agreed to submit proposed orders instead of presenting closing argument.

*The Trial Court's Order*

The trial court denied Groover's motion for equitable relief, finding that "there are extraordinary circumstances that justify the denial of reinstatement and front pay."

Among the reasons for denying the motion, the trial court wrote that "[a]nother extraordinary equitable circumstance to disallow reinstatement is when the employer has no vacancies in which to place the Plaintiff." The trial court also pointed to the witness's testimony "as to the substantial difference between daytime and nighttime assistant principals in terms of training and education." Also, the trial court pointed to the witness's testimony that the School Board had a hiring freeze because of the COVID-19 pandemic and was filling any vacant school administrator positions with administrators from the School Board's main office.

*Discussion*

8

In general, a trial court's denial of equitable relief is reviewed for an abuse of discretion. *Three Keys, Ltd. v. Kennedy Funding, Inc.*, 28 So. 3d 894, 905 (Fla. 5th DCA 2009). The determination of whether reinstatement is an appropriate remedy is reviewed for an abuse of discretion. *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985). "Where, in reaching that decision, the [trial] court makes a legal determination, we review that legal determination *de novo* and examine relevant factual findings for clear error." *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).

In Florida, the court's discretion is limited by section 112.3187(9)(a), Florida Statutes (2020), which states that relief in a whistleblower action "must include" either reinstatement or reasonable front pay as alternative relief:

> (9) RELIEF.—In any action brought under this section, the relief ***must include*** the following:
>
> (a) ***Reinstatement*** of the employee to the same position held before the adverse action was commenced, or to an equivalent position ***or reasonable front pay as alternative relief***.

(Emphasis added).

The word "must" in a statute "typically suggests a command or requirement." *Little Brownie Props., Inc. v. Wood*, 328 So. 3d 1049, 1051 (Fla. 5th DCA 2021). Moreover, Florida's Public Whistleblower Act is a remedial statute and "should be construed liberally in favor of granting access to the remedy." *Martin County v. Edenfield*, 609 So. 2d 27, 29 (Fla. 1992).

Generally, "Florida applies federal Title VII case law to the Whistleblower Act." *Rustowicz*, 174 So. 3d at 419. However, there is a significant difference between section 112.3187(9) and the federal statute governing equitable relief.

Unlike the Florida statute, the analogous federal statute uses the discretionary word "may." Specifically, under the federal statute, if an employer has intentionally engaged in an unlawful employment practice, "the court ***may*** . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , ***or any other equitable relief as the court deems appropriate***." 42 U.S.C. § 2000e-5(g) (emphasis added).

Still, this court has looked to federal case law in analyzing the remedies under the Florida Whistleblower Act. In *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904 (Fla. 4th DCA 2013), we explained that reinstatement is typically the "preferred remedy" for a wrongful firing, but front pay may be applied when reinstatement is not viable. *Id.* at 914–15. "[T]he law is clear that a plaintiff so discriminated against in the employment context is normally entitled to reinstatement and back pay, absent special circumstances warranting the denial of equitable relief." *Williams v. City of Valdosta*, 689 F.2d 964, 977 (11th Cir. 1982).

Nonetheless, "reinstatement is not always required as equitable relief." *Farley v. Nationwide Mut. Ins. Co*, 197 F.3d 1322, 1339 (11th Cir. 1999). "[W]hen extenuating circumstances warrant, a trial court may award a plaintiff front pay in lieu of reinstatement." *Id.* "Front pay is an exceptional remedy and should only be awarded in lieu of reinstatement when extraordinary circumstances render reinstatement 'impractical or impossible.'" *Mathieu v. Gopher News Co.*, 273 F.3d 769, 778 (8th Cir. 2001) (quoting *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 641 (8th Cir. 1997)).

"Such circumstances include situations where discord and antagonism between the parties would render reinstatement *ineffective* as a make-whole remedy." *Farley*, 197 F.3d at 1339 (internal quotation marks omitted). Courts have also found reinstatement "inappropriate in situations where there is no vacancy in which to place the plaintiff or where an incumbent employee must be discharged to accomplish the reinstatement." *Tucker v. Hous. Auth. of Birmingham Dist.*, 507 F. Supp. 2d 1240, 1281 (N.D. Ala. 2006).

"Front pay is considered equitable because it is awarded in lieu of an injunction requiring reinstatement, where reinstatement is impossible or inadvisable." *O'Neal v. Fla. A & M Univ. ex rel. Bd. of Trs. for Fla. A & M Univ.*, 989 So. 2d 6, 12 n.3 (Fla. 1st DCA 2008). "Injunctive relief is quintessentially equitable and front pay is its monetary equivalent." *Id.*

"The plaintiff bears the initial burden of providing the [trial] court with the essential data necessary to calculate a reasonably certain front pay award, including the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." *Barbour v. Merrill*, 48 F.3d 1270, 1279 (D.C. Cir. 1995) (internal quotation marks omitted). "If a plaintiff fails to supply the [trial] court with the information necessary to 'calculate a reasonably certain award,' the court may reject the request for front pay." *Ogden v. Wax Works, Inc.*, 29

10

F. Supp. 2d 1003, 1012 (N.D. Iowa 1998) (citation omitted). "Moreover, front pay awards, while often speculative, cannot be unduly so." *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992). "The defendant remains free to challenge the award's amount, length, or interest rate, or to establish as an affirmative defense that the plaintiff failed to mitigate damages." *Barbour*, 48 F.3d at 1279–80.

"[F]ront pay is intended to assist in making a discriminatorily discharged employee whole," but "courts have cautioned that awards of front pay should be tempered to avoid a 'windfall' to the successful plaintiff." *Ogden*, 29 F. Supp. 2d at 1011. "[T]he fact-intensive nature of the front pay inquiry precludes an all-encompassing list of relevant considerations." *Id.* at 1012. However, the following factors may assist a trial court in calculating a front pay award:

> (1) the plaintiff's age;
> (2) the length of time the plaintiff was employed by the defendant employer;
> (3) the likelihood the employment would have continued absent the discrimination;
> (4) the length of time it will take the plaintiff, using reasonable effort, to secure comparable employment;
> (5) the plaintiff's work and life expectancy;
> (6) the plaintiff's status as an at-will-employee;
> (7) the length of time other employees typically held the position lost;
> (8) the plaintiff's ability to work;
> (9) the plaintiff's ability to work for the defendant-employer;
> (10) the employee's efforts to mitigate damages; and
> (11) the amount of any liquidated or punitive damage award made to the plaintiff.

*Id.* at 1014–15 (citations omitted).

Some federal cases have suggested that there may be situations in which neither reinstatement nor front pay is an appropriate remedy. *See Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 337 (5th Cir. 2019); *Ogden*, 29 F. Supp. 2d at 1007; *Evans v. State of Conn.*, 967 F. Supp. 673, 685 (D. Conn. 1997). However, these cases should not be applied in Florida in light of the language in section 112.3187(9)(a) that makes either reinstatement or front pay mandatory.

Although a trial court "retains its discretion to consider all the circumstances in [the] case when it determines what equitable relief may

be appropriate, it cannot base its decision on its own factual findings that conflict with those expressly made by the jury." *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101 (8th Cir. 1982). In other words, the trial court "is not free to reject or contradict findings by the jury on issues that were properly submitted to the jury." *Newhouse*, 110 F.3d at 641.

One of the trial court's reasons for denying reinstatement—the lack of vacancies for the same position or a reasonably equivalent position—is supported by competent, substantial evidence. We therefore affirm the trial court's ruling not to order reinstatement.

This leaves the issue of front pay. We reject the School Board's argument that the trial court had the discretion to deny both reinstatement and front pay. As we observed above, this argument ignores section 112.3187(9)(a)'s mandatory command to award either reinstatement or front pay. No exception is written into the statute for "equitable considerations" or "exceptional circumstances." The School Board's reliance on federal case law is misplaced because the analogous federal statute is discretionary, not mandatory. *See* 42 U.S.C. § 2000e-5(g).

Given the mandatory language of section 112.3187(9)(a), we reverse the denial of front pay, and remand to the circuit court for a new hearing on front pay consistent with this opinion.

*Affirmed as to Case No. 4D20-1547; affirmed in part and reversed in part as to Case No. 4D20-2276.*

MAY and CIKLIN, JJ. concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**